WHITE et al. v. FAHRING et al.   (No. 7651.)

(Court of Civil Appeals of Texas. Galveston.
March 20, 1919. Rehearing Denied
April 17, 1919.)

1. WATERS AND WATER COURSES ⚙⇒216 —
IRRIGATION DISTRICTS — TAXES—CONSTITU-
TIONAL LIMITATIONS.

Acts 29th Leg. c. 122, §§ 34, 48, providing
for assessments in irrigation districts organiz-
ed under the act, in addition to bonds that may
be issued, cannot be held invalid simply be-
cause limitations under Const. art. 3, § 52, as
to amount of obligations that district may as-
sume, are not stated in the sections, the consti-
tutional limitations being binding, though not
stated.

2. CONSTITUTIONAL LAW ⚙⇒48 — CONSTRUC-
TION OF STATUTE—FAVORING VALIDITY.

If an act is susceptible of two construc-
tions, one which makes it valid and the other
invalid, that construction should be adopted
which will sustain validity.

3. CONSTITUTIONAL LAW ⚙⇒48—VALIDITY OF
STATUTE — LEGISLATIVE INTENT—PRESUMP-
TION.

It will not be presumed that the Legisla-
ture intended to pass an act in violation of the
Constitution, and an act will not be so con-
strued when it is susceptible of a different con-
struction.

4. EVIDENCE ⚙⇒83(1)—OFFICERS—VIOLATION
OF CONSTITUTIONAL PROVISION — PRESUMP-
TION.

It will not be presumed that defendants,
board of directors of irrigation district in ques-
tion, will ever attempt to violate any of the
provisions of the Constitution limiting the
taxing powers of the district in the amount of
indebtedness it may incur.

5. WATERS AND WATER COURSES ⚙⇒231—IR-
RIGATION DISTRICTS — ESTABLISHMENT —
STATUTE.

Acts 29th Leg. c. 122, §§ 34, 48, providing
for assessments in irrigation districts organiz-
ed under the act in addition to bonds that may
be issued, were not intended to authorize ad-
ditional taxation within the constitutional sense
of that term, but to authorize assessments bas-
ed on property benefits, and are ineffectual in
that they do not provide for any hearing for
determination of benefits accruing to property
upon which assessments are made.

6. STATUTES ⚙⇒64(5)—INVALIDITY IN PART.

The presence in Acts 29th Leg. c. 122, of
sections 34, 48, which are inoperative because
they do not provide for any hearing for deter-
mination of benefits, to property within irri-
gation districts, does not render the whole act
violative of the Constitution, since the main
purpose of the act can be given effect without
regard to the sections, and must be upheld, the
subsequent acts of Legislature (Acts 33d Leg.
c. 172, § 95 [Vernon's Sayles' Ann. Civ. St.
1914, art. 5107—95]; Acts 35th Leg. c. 87, §
95 [Vernon's Ann. Civ. St. Supp. 1918, art.
5107—95]) having cured the defects.

7. WATERS AND WATER COURSES ⚙⇒216—IR-
RIGATION DISTRICTS—INDEBTEDNESS—CON-
STITUTIONAL PROVISIONS.

The $2,000 indebtedness for organization
purposes of irrigation districts authorized by
Acts 29th Leg. c. 122, § 50, is to be paid out of
assessments which can only be made after be-
ing authorized by two-thirds of the voters of
the district, and the section, when so construed,
is not in violation of Const. art. 3, § 52, as to
two-thirds vote being required to lend credit
of district.

8. STATUTES ⚙⇒64(4)—INVALIDITY IN PART.

Though section 20 of Acts 29th Leg. c. 122,
violates Const. art. 16, § 30, in that it fixes the
term of office of the board of directors of irri-
gation districts at four years, the other provi-
sions of the act are not so dependent on,
or connected with, provision fixing the terms of
office as to render them invalid.

9. WATERS AND WATER COURSES ⚙⇒216—IR-
RIGATION DISTRICTS — CURING DEFECTIVE
STATUTE.

The Legislature having by timely enact-
ment (Acts 33d Leg. c. 172, § 72 [Vernon's
Sayles' Ann. Civ. St. 1914, art. 5107—72]) rem-
edied the defect in Acts 29th Leg. c. 122, § 20,
fixing terms of office of members of board of
directors of irrigation districts at four years,
contrary to Const. art. 16, § 30, before any of
the directors of district in question had serv-
ed two years, and having in express terms val-
idated districts created under the act of 1905,
and the acts of the directors and officers of
such districts, no one can complain of sec-
tion 20.

10. WATERS AND WATER COURSES ⚙⇒216—IR-
RIGATION DISTRICTS — BONDS — POWER OF
LEGISLATURE.

Const. art. 3, § 52, authorizing the granting
of credit by the district for the construction
and maintenance of pools, lakes, reservoirs,
dams, canals, and waterways for the purpose
of irrigation, authorizes an act of the Legis-
lature (Acts 29th Leg. c. 122) permitting irri-
gation districts to issue bonds for the purpose
of constructing irrigation works, and acquiring
the necessary property and rights therefor, and
for the operation of an irrigation plant.

11. WATERS AND WATER COURSES ⚙⇒225—IR-
RIGATION DISTRICT — LEGAL EXISTENCE —
FORFEITURE.

Evidence held to show due diligence on the
part of an irrigation district organized under
Acts 29th Leg. c. 122, to carry out the purpose
of its organization, so that its legal existence
had not been forfeited on that account.

12. WATERS AND WATER COURSES ⚙⇒230(3)—
IRRIGATION DISTRICTS — CANCELLATION OF
BONDS—SUIT—CONDITION PRECEDENT.

A taxpayer cannot maintain a suit to can-
cel bonds of an irrigation district without al-
leging and proving that the board of directors
of the district has refused to institute such
suit.

13. WATERS AND WATER COURSES ⚙⇒230(4)—
IRRIGATION DISTRICTS—SALE OF BONDS FOR
LESS THAN FACE VALUE.

Where sale of $40,000 of bonds of irriga-
tion district for 90 per cent. of their face val-

ue was properly advertised and conducted, and the purchaser did not know that the statute prohibited sale for less than face value, the court did not err in validating the title to purchaser to $36,000 par value of said bonds, and requiring surrender of the $4,000 par value.

Appeal from District Court, Galveston County; Robt. G. Street, Judge.

Suit by R. M. White and others against G. H. Fahring and others. From the judgment rendered, plaintiffs appeal. Affirmed.

Smith & Crawford and Crook, Lord, Lawhon & Ney, all of Beaumont, for appellants.
C. R. Wharton and S. A. McMeans, both of Houston, and A. W. Marshall, of Anahuac, for appellees.

PLEASANTS, C. J. The appellants, who are owners of lands situated in Trinity River Irrigation District No. 12, Chambers county, brought this suit against the officers of said district and the holders of irrigation bonds issued by the district, seeking to have the district declared invalid and without lawful existence, and said bonds to be decreed void and unenforceable, and to restrain the defendant officers from assessing or collecting, or attempting to assess or collect, any taxes upon any property within the district, and the defendant bondholders from collecting, or attempting to collect, said bonds, or asserting same as a claim against the district.

The trial in the court below without a jury resulted in a verdict sustaining the lawful organization and existence of the district, and the validity of the bonds issued thereby, but adjudging that the defendant Anahuac Canal Company only acquired title to $36,000 of the $40,000 in bonds of the district issued to it, and requiring said defendant to surrender $4,000, par value, of said bonds.

The record discloses that the Trinity irrigation district was organized on October 30, 1911, under the provisions of the Irrigation Act of 1905 (chapter 122, Acts of 29th Legislature), and an order of the commissioners' court of Chambers county made and entered in accordance with the provisions of said act. There is nothing in the record showing that the provisions of said act were not complied with in the organization of the district. For the purpose of raising the money necessary to procure an irrigation system for the district in accordance with plans adopted by the district, the board of directors of the district, on October 12, 1912, acting under the provisions of the statute above mentioned, issued bonds of the district in the sum of $125,000. The bonds were issued under the following order of the board of directors:

"It is hereby ordered by the board of directors of the Trinity River Irrigation District * * * that the bonds of the said district be issued on the faith and credit of said district as established by the orders of the commissioners' court of Chambers county, Tex., * * * for the purpose of providing funds to be used in providing the district a fresh-water reservoir which shall include Turtle Bay and such other bodies of water as it may be practicable to include within such reservoir, together with a connection between such reservoir and the Trinity river as far above the mouth of that stream as may be deemed practicable, and such works as may be necessary to procure for the district an assured fresh-water supply and distribute the same among all of the lands of the district. * * * Each of said bonds shall recite upon its face that it is issued by authority of an act of the Twenty-Ninth Legislature of Texas, which became a law without the approval of the Governor on the 15th day of July, 1905, being chapter 122 of the Acts of Regular Session of the Twenty-Ninth Legislature, entitled 'An act to provide for the organization and government of irrigation districts and to provide for the acquisition and construction thereby of works for the irrigation of lands embraced within such districts, and to issue bonds in payment therefor, as authorized under the Constitution; and also to provide for the distribution of water for irrigation purposes, and to furnish water for mechanical purposes.' * * * The said bonds and the interest thereon shall be paid by revenue derived from an annual assessment upon the property of the district, and all of the property of the district shall be and remain liable to be assessed for such payments, as provided in the act thereinbefore referred to."

As required by this order, each of the bonds issued thereunder recites that it is issued for the purposes and under the authority stated in the order.

Thereafter, on January 30, 1916, additional bonds in the sum of $30,000 under an order of the board of directors, made and entered on November 27, 1915, were issued. These last-mentioned bonds were issued for the purpose of obtaining funds to repair damage to the irrigation system caused by the storm of August, 1915, and for further improvement of the system.

The district began work of establishing an irrigation system in June, 1913, when it commenced to build a bulkhead across the mouth of Turtle Bay to keep out salt water and provide a fresh-water reservoir. It has also built a levee along the bank of the Trinity river to assist in impounding the water therefrom. The bulkhead in Turtle Bay was partially destroyed by the storm of 1915, but has since been rebuilt. No canals, laterals, or flumes have been constructed, nor has any pumping plant been erected, or any site therefor, or site for a dam for irrigation purposes been acquired. Since the filing of this suit on May 17, 1917, nothing has been done toward completing or improving the system.

The fresh water which has been acquired for the use of the district by the means be-

fore stated is being distributed in portions of the district by canals owned and operated by private corporations.

The defendant Anahuac Canal Company purchased $40,000 of the bonds issued by the district for 90 per cent. of their face value. There is no evidence showing the payment of any interest on these bonds by the district.

Under appropriate assignments of error the appellants attack the lawful existence of the district, and its right to exercise the power of taxation, upon the ground that the Irrigation Act of 1905, under which the district was organized and the first series of bonds of $125,000 issued, is invalid because its provisions are in conflict with the Constitution of this state.

[1] Under the first assignment it is contended that the act is invalid because it authorizes irrigation districts created thereby to incur obligations in an unlimited amount, in contravention of the provision of the statute which restricts the amount of such obligations to one-fourth of the assessed valuation of the real property of the district.

Article 3, § 52, of the amended state Constitution is as follows:

"The Legislature shall have no power to authorize any county, city, town or other political corporation or subdivision of the state, to lend its credit or to grant public money or thing of value in aid of, or to, any individual, association or corporation whatsoever, or to become a stockholder in such corporation, association or company: Provided, however, that under legislative provision any county, any political subdivision of a county, any number of adjoining counties, or any political subdivision of the state, or any defined district now or hereafter to be described and defined within the state of Texas, and which may or may not include towns, villages or municipal corporations, upon a vote of two-thirds majority of the resident property taxpayers voting thereon who are qualified electors of such district or territory to be affected thereby, in addition to all other debts, may issue bonds or otherwise lend its credit to any amount not to exceed one-fourth of the assessed valuation of the real property of such district or territory, except that the total bonded indebtedness of any city or town shall never exceed the limits imposed by other provisions of this Constitution, and levy and collect such taxes to pay the interest thereon and provide a sinking fund for the redemption thereof, as the Legislature may authorize, and in such manner as it may authorize the same, for the following purposes, to wit: * * *

"(b) The construction and maintenance of pools, lakes, reservoirs, dams, canals and waterways for the purposes of irrigation, drainage or navigation, or in aid thereof."

Section 30 of the Irrigation Act of 1905, p. 243, provides for the issuance of bonds of the irrigation district to any amount not to exceed one-fourth of the assessed valuation of the real property of such district.

Section 34 of the Act of 1905 provides that—

"in case the money raised by the sale of bonds issued be insufficient, or in case the bonds be unavailable for the completion of the plan of canal and works adopted, and additional bonds be not voted, it shall be the duty of the board of directors to provide for the completion of said plan by levy of assessments therefor."

Section 48 of the act provides that—

"the board of directors may at any time, when in their judgment, it may be deemed advisable, call a special election and submit to the qualified electors of the district the question of whether or not a special assessment shall be levied for the purpose of raising money to be applied to any of the purposes provided in this act. * * * If two-thirds or more of the votes cast are 'Assessment, Yes,' the board shall at the time of the annual levy hereunder levy an assessment sufficient to raise the amount voted."

Sections 35, 35a, and 39 provide for the manner of levying, assessing, and collecting of taxes on property within the irrigation district; and section 33 provides that the bonds and interest thereon shall be paid by revenue derived from an annual assessment on the property of the district, and that all of the property in the district shall be and remain liable to be assessed for such payments as provided in the act.

It appears from section 30 of the act above quoted that the district is only authorized to issue bonds to the amount of one-fourth of the assessed valuation of the real property of the district. In sections 34 and 48 of the act provision is made for assessments, in addition to the bonds that may be issued, without any express limitation in the act as to the amount of such assessments. It is the absence of this limitation that appellants insist renders the act unconstitutional. We do not think the statute should be construed as authorizing an assessment which would make the obligations of the district exceed the limit fixed by the Constitution. To assume that the Legislature so intended would render the provisions for assessments unconstitutional.

[2] It is a well-settled rule that if an act is susceptible of two constructions, one of which makes it valid and the other renders it invalid, that construction should be adopted which will sustain its validity.

[3] It will not be presumed that the Legislature intended to pass an act in violation of the Constitution, and an act will not be so construed when it is susceptible of a different construction.

The constitutional limitation as to the amount of the obligations that the district can assume is just as binding upon the district as it would be if written in the statute, and therefore it was unnecessary to insert it in the statute, and the failure of the Leg-

islature to place it in the statute does not subject the act to the construction that it authorizes the district to assume obligations in excess of the amount permitted by the Constitution.

[4] There is no claim that any indebtedness has been created by this district in excess of the amount allowed by the Constitution, or that any tax has been levied in violation of any provision of the Constitution; and it will not be assumed that the board of directors in performing the duties of their office will ever attempt to violate any of the provisions of the Constitution limiting the taxing power of the district in the amount of indebtedness it may incur. If they should ever make such attempt, the Constitution can serve just as effectively to protect the property owners of the district as it could if its limitations were expressed in the statute, and the act cannot be held invalid because the constitutional limitation of the powers conferred upon the district are not stated therein.

[5] We also think it manifest from the act as a whole that the provisions as to assessments were not intended to authorize additional taxation in the constitutional sense of that term, but to authorize assessments based upon property benefits. Considered as intending to authorize assessments as contradistinguished from taxes, these provisions are inadequate and ineffective, in that they fail to provide any hearing for the determination of the benefits accruing to the property upon which the assessments may be made.

[6] When so considered, these provisions are but an imperfect exercise of a power possessed by the Legislature, and therefore inoperative, but their presence in the act would not render it violative of the Constitution.

The main purpose of the act can be given effect without regard to these imperfect provisions, and the statute must therefore be upheld. Subsequent acts of the Legislature, in 1913 and 1917, cure these defects in the act of 1905. Acts 1913, c. 172, p. 405, § 95 (Vernon's Sayles' Ann. Civ. St. 1914, art. 5107—95); Acts 1917, c. 87, p. 202, § 95 (Vernon's Ann. Civ. St. Supp. 1918, art. 5107—95).

[7] The validity of the act of 1905 is next assailed on the ground that section 50 of said act authorizes the board of directors to incur an indebtedness not exceeding $2,000, and to issue warrants of the district therefor bearing 6 per cent. interest per annum, without submitting the question of such indebtedness to a vote of the property tax payers of the district. Acts 1905, p. 250. This section of the statute is as follows:

"The board of directors or other officers of the district shall have no power to incur any debt or liability whatever, either by issuing bonds or otherwise, in excess of the express provisions of this act; and any debt or liability incurred in excess of the express provisions

shall be and remain absolutely void, except that for the purposes of organization or for any of the purposes in this act the board of directors may, before the collection of the first assessment, incur an indebtedness not exceeding in the aggregate the sum of $2,000, and may cause warrants of the district to issue therefor bearing interest at six per cent. per annum."

It is, we think, clear that the $2,000 indebtedness for organization purposes authorized by this section of the act is to be paid out of assessments, which can only be made after being authorized by two-thirds of the votes of the district in an election held under the provisions of section 48 of the act. When so construed this provision of the act is not in conflict with section 52, art. 3, of the Constitution, before quoted. If this section of the act could be held subject to the objection urged by appellants, it is not so essential a part of the act that its invalidity would destroy the whole statute, and it cannot be assumed that the Legislature would not have passed the act without having this section embodied therein.

[8, 9] The third assignment assails the act as invalid because the terms of office of members of the board of directors provided for in this act are fixed at four years, in violation of section 30, art. 16, of the Constitution, which fixes the terms of all officers in this state, not otherwise fixed by the Constitution, at two years. The act fixes the term of office at four years, and was in this respect violative of the provision of the Constitution above mentioned. We do not think the other provisions of the act are so dependent upon, or connected with, the provision fixing the terms of office of the members of the board of directors at four years, that to hold this provision void would render the act ineffectual for the accomplishment of its purposes, and therefore cannot say, as was said by our Supreme Court in the case of Kimbrough v. Barnett, 93 Tex. 301, 55 S. W. 120, that "it is evident the Legislature would not have passed the law without the void provision," and we must therefore hold that this provision does not render the whole act void.

In addition to this, the record shows that the Trinity River Irrigation District was organized in 1912, and that within less than a year thereafter the Legislature passed the irrigation act of 1913, before cited, which act in express terms repealed the act of 1905, and validated all proceedings in the creation of irrigation districts under the repealed act. This act of 1913, § 72 (Vernon's Sayles' Ann. Civ. St. 1914, art. 5107—72), fixes the term of directors at two years, which is the constitutional period. Section 71 of the act of 1917, (Vernon's Ann. Civ. St. Supp. 1918, art. 5107—72), which is now in force, does the same thing. The Legislature, therefore, has by timely enactment remedied the defect in the statute of 1905. It had authority in the first

instance to fix the term of these directors at any period within two years, and having, by appropriate legislation, remedied the former statute long before this suit was filed and before any of the directors had served as much as two years, and having in express terms validated the creation of these districts and the acts of the directors and officers of such districts under the act of 1905, no one can now complain on account of section 20 of the act.

[10] Under the assignments of error from the fourth to the ninth, inclusive, appellants attack the act and the bonds issued thereunder on the ground that both are invalid because the act authorizes the issuance of bonds, and the bonds issued by the district were issued for purposes not authorized by the Constitution. This contention is based upon the assumption that the provision of the Constitution authorizing the lending of credit by the district for "the construction and maintenance of pools, lakes, reservoirs, dams, canals, and waterways for the purposes of irrigation," does not authorize an act by the Legislature permitting irrigation districts to issue bonds for the purpose of constructing irrigation works and acquiring the necessary property and rights therefor, and for operating an irrigation plant.

We think the learned trial judge sufficiently answered these objections questioning the validity of the statute and the bonds in the following portion of his opinion filed in the court, which we adopt:

"It is objected that the act of 1905 is not authorized by the Constitution because it provides not only for the organization of irrigation districts, but also for their acquisition or purchase and operation. The general purpose of the Constitution was to enable people to form irrigation districts, and it is a sound rule of constitutional construction that the language used must be interpreted in the light afforded by such purpose. The operation of irrigation canals may not be a necessary incident of ownership, but it is the natural and usual incident thereof. The words used in the act are consistent with the context and in harmony with the purposes of the adoption by the people of the section of the Constitution quoted. Halbert v. San Saba Land, etc., Ass'n, 89 Tex. 230, 34 S. W. 639, 49 L. R. A. 193; Morton v. Gordon, Dallam, Dig. 396; Maddox Bros. v. Covington, 87 Tex. 454, 29 S. W. 465; Aransas County v. Coleman, 108 Tex. 216, 191 S. W. 553. 'The voters as a rule are unlearned in the law, and, as persons of that class would reasonably construe the Constitution upon which they vote, such ought to be the construction of the courts.' Brady v. Brooks, 99 Tex. 378, 89 S. W. 1056.

"The foregoing general rules apply both to the terms 'acquisition' or 'purchase and operation.' The term 'operation' is included in the term 'maintenance.' See Dallas County v. Plowman, 99 Tex. 509, 91 S. W. 221; also 88 S. W. 252. There have been drainage district laws in Texas for fifty years. They have

been uniformly recognized as within legislative power. There never was occasion for any constitutional grant of power for their enactment, except that the power to issue bonds, pledge credit, etc., was expressly denied by the Constitution of 1876, and can now only be extended by virtue of the amendment in 1904 to section 52, art. 3, quoted in the first part of this opinion. Such previous acts are believed always to have authorized operation. See Imperial Nav. Co. v. Jayne, 104 Tex. 395, 138 S. W. 575, Ann. Cas. 1914B, 322."

[11] Under the tenth and eleventh assignments it is contended that the district had been ipso facto dissolved under the provisions of the irrigation act of 1913, prior to the issuance of the $30,000 of bonds on January 31, 1916, because it did not, within the two years after its creation, "begin to acquire the necessary canals, ditches, flumes, laterals, reservoirs, etc., and all other things necessary to the successful operation of an irrigation district," and therefore said bonds are void and said district has now no legal existence.

These assignments are not supported by the facts which we have before set out, showing what has been done by the district in its effort to establish and successfully operate on irrigation district. We think the trial judge correctly held that the evidence shows due diligence on the part of the district to carry out the purposes of its organization, and that its legal existence has not been forfeited.

[12] We do not think the court erred in failing to cancel the sale of all of the $40,000 of bonds sold by the district to the defendant Anahuac Canal Company. So far as this record shows the sale was properly advertised and conducted, the only illegality being that the bonds were sold for less than face value and accrued interest, and it is shown that the purchaser did not know that the statute prohibited the sale of irrigation bonds for less than their face value. There was no actual fraud in the transaction. In these circumstances, we can see no reason for holding that the sale of all of the bonds should be canceled. Certainly equity would not permit this, and allow the district to retain the money paid by the purchaser in good faith. Upon this issue the trial court entered the following judgment:

"But it appearing to the court that the Anahuac Canal Company, a corporation, has purchased and is the holder of $40,000 of the bonds of the Trinity River Irrigation District No. 1, and that it purchased the same for a sum less than the par value of the bonds, to wit, 90 cents on the dollar, it is further ordered that (the defendant Trinity River Irrigation District having filed its trial amendment praying for such relief) the defendant Anahuac Canal Company be, and it is hereby, perpetually enjoined against the collection from the defendant Trinity River Irrigation District No. 1 the bonds so held by the defendant Anahuac Canal Company, or any interest due or to become due

thereon, until and unless the said defendant Anahuac Canal Company shall surrender unto the registry of this court, for the use and benefit of the Trinity Irrigation District, $4,-000 par value, retaining bonds at par value of $36,000, but the title of the Anahuac Canal Company to $36,000 par value of said bonds is recognized and here now fully validated."

It seems to us that this disposition of the matter by the trial judge sufficiently vindicates the law and protects the taxpayers of the district.

There is no evidence that the bonds are worth, or were ever worth, more than their face value, and no evidence that any interest has ever been paid the Anahuac Canal Company on said bonds.

[13] If, however, we are wrong in our conclusion upon this matter, we do not think a taxpayer could maintain a suit to cancel the sale of the bonds, unless he should allege and prove that the board of directors of the district had refused to institute such suit, and there is no such allegation in the petition on this case. Joy v. Compress Co., 24 Tex. Civ. App. 94, 58 S. W. 173; 10 Cyc. 963.

All of appellants' assignments of error have been duly considered, and in our opinion none of them can be sustained. It follows that the judgment of the court below should be affirmed, and it has been so ordered.

Affirmed.

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted, October 15, 1919.