## DALLAS COUNTY, ET AL., v. GEO. H. PLOWMAN.

### No. 1511. Decided February 20, 1906.

**1.—Constitutional Law—Public Road—Local Law.**

The phrase, "maintenance of public roads," in article 8, section 9, of the Constitution, amendment of 1890, authorizing the Legislature to pass local laws for such purpose, includes in its scope the laying out, opening and construction of new roads as well as the repairing of those already laid out; and the Act of the Twenty–fourth Legislature, chapter 122, page 213, enacting a local road law for Dallas County, which provided for condemnation of lands by the county upon the same proceedings as by a railroad company, was not, in view of such amendment, rendered unconstitutional by article 3, section 56, and article 11, section 2, of the Constitution. ' (Pp. 512–514.)

**2.—Same—Construction.**

The meaning of the word "maintenance" in the amendment to article 8, section 9, of the Constitution is not restricted, as in article 3, section 56, subdivision 5, by the context, to the keeping up of roads as distinguished from the laying out and opening them, nor is it confined to its narrow and literal construction; but it must be held to embrace all the things necessary to accomplish the obvious purpose of the amendment, including the opening as well as repair of roads. (P. 513.)

**3.—Public Road—Condemnation—General or Local Law.**

Section 11 of chapter 122, Acts Twenty–fourth Legislature (the local road law for Dallas County), in providing a special form of procedure for condemnation of land for a public road differing from the general law of the state, is not

cumulative; proceedings for such condemnation in that county, after its adoption, in the manner prescribed by the general law, were ineffective to work condemnation and the county could be enjoined from taking possession under them.   (P. 514.)

Error to the Court of Civil Appeals for the Fifth District, in an appeal from Dallas County.

Plowman sued the county to enjoin the taking possession of his land for a public road.   His preliminary injunction was dissolved on hearing and himself enjoined from obstructing the highway.   He appealed, and the judgment was reversed and rendered in his favor, making his injunction perpetual.   The county then obtained a writ of error.

*Sam. J. Hogsett* and *Cockrell & Gray,* for plaintiffs in error.—Section 11 of the special act of the Legislature, passed at regular session, 1905, authorizing Dallas, Lamar and Medina counties to occupy land for the purpose of opening, widening, straightening or draining of any road, or part thereof, by condemnation in the same manner that a railroad company can condemn land for right of way, is unconstitutional, for the reason that the same is repugnant to article 3, section 56 of the Constitution of the State of Texas.

Sec. 11 of the special law passed at the regular session of the Twenty-fourth Legislature in 1895, providing that Dallas, Lamar and Medina counties may occupy land for the purpose of opening, widening, draining or straightening any road, is unconstitutional, for the reason that it is provided in section 56 of article 3 of the Constitution that "where a general law can be made applicable, no local or special law shall be enacted."

The honorable court erred in holding that section 11 of said special act repealed the general road law, providing for the condemnation of land for road purposes by the appointment of a jury of view, and in failing to hold that said special act was merely cumulative to the general road law on the subject; and having so erred, it erred in refusing to grant your petitioner a rehearing herein, for the reasons indicated in paragraph 6 of their motion for a rehearing; that said special act did not repeal, and was not intended by the Legislature to repeal, the general road law upon this subject, but was merely intended to grant to the Commissioners' Court of Dallas County a cumulative or additional right or method by which they might condemn property for road purposes, said right to be exercised at the option of said Commissioners' Court.   (See San Angelo Nat. Bank v. Fitzpatrick, 88 Texas, 216.)

*Geo. H. Plowman,* for defendant in error.—Art. 8, sec. 9, of the Constitution, in authorizing the Legislature to pass local laws for the maintenance of public roads and highways, expressly authorized the special act of the Legislature in question.   It would, indeed, be a most narrow and illiberal construction to say that the Legislature could pass no local laws providing for the opening of roads, and could only provide for maintaining roads that were already opened.   Smith v. Grayson County, 44 S. W., 921.

The act of the Twenty-fourth Legislature, entitled "An Act to create a

more efficient road system in Dallas, Lamar and Medina counties," being the latest expression of the legislative will, and furnishing a complete system and mode of procedure, repeals as to those counties the general road law of the State. Acts of Twenty-fourth Legislature, 1895, pp. 213, 216; secs. 11 and 15, vol. 10, Gammel's Laws of Texas; Gen. Provisions of Rev. Stat., sec. 20, arts. 4446, 4447, 4448, 4450, 4459, 4461, 4463, 4467, 4468, 4469, 4471, 4475; Rev. Stat., Final Title, General Provisions, sec. 20; Thompson v. Buckley, 1 Texas, 33; De Leon v. Owen, 3 Texas, 153; Bryan, v. Sundberg, 5 Texas, 419; Warren v. Shuman, 5 Texas, 442; Rogers v. Watrous, 8 Texas, 64; Cains v. The State, 20 Texas, 370; Stirman v. The State, 21 Texas, 734; Engleking v. Von Wamel, 26 Texas, 471; Galveston, B. & C. N. R. W. Co. v. Gross, 47 Texas, 435; Runnels v. Belden, 51 Texas, 50; Tunstall v. Wormley, 54 Texas, 480; Russell v. Farquhar, 55 Texas, 359; State v. International & G. N. Ry. Co., 57 Texas, 534; Texas Midland R. R. Co. v. Southwestern Tel. Co., 24 Texas Civ. App., 200; Perez v. Perez, 59 Texas, 322; Erwin v. Blanks, 60 Texas, 585; Lufkin v. City of Galveston, 63 Texas, 437; Burgess v. Hargrave, 64 Texas, 110; Gulf, C. & S. F. Ry. Co. v. Rambolt, 67 Texas, 656; Raines v. Herring, 68 Texas, 469; Galveston Wharf Co. v. Gulf, C. & S. F. Ry. Co., 72 Texas, 457; Texas-Mexican Ry. Co. v. Jarvis, 80 Texas, 456; Dodson v. Bunton, 81 Texas, 655; Sneed v. Falls Co., 91 Texas, 170; Dickinson v. State, 41 S. W., 760; Schley v. Hale, 1 App. C. C., sec. 933; Herrington v. Gal. Co., 1 App. C. C., sec. 793; Harold v. The State, 16 Texas Cr. App., 157; Smith v. Grayson Co., 18 Texas Civ. App., 153; Stebbins v. The State, 22 Texas Cr. App., 35.

BROWN, ASSOCIATE JUSTICE.—Plowman instituted this suit in the District Court of Dallas County for the purpose of annulling the condemnation of his land for a public road, which had been secured by the county through regular proceedings under the general law. Plowman procured from the judge of the District Court a writ of injunction enjoining the county from taking possession of the land. The land belonged to Plowman and his minor children, but he prosecuted the suit alone. Upon a trial in the District Court, the injunction was dissolved, and a mandatory injunction ordered, requiring Plowman to remove a fence placed by him so as to obstruct the road, from which he took an appeal to the Court of Civil Appeals for the Fifth District. The honorable Court of Civil Appeals reversed the judgment of the District Court, and entered judgment against Dallas County perpetuating the injunction which had been before granted.

The facts are briefly stated as follows: Plowman and his children owned a tract of land in Dallas County, partially within the corporate limits of the city of Oak Cliff. The requisite number of citizens of that county signed a petition to the Commissioners' Court of Dallas County requesting that court to order the opening of a public road which would run across the land of Plowman and his children. Plowman refused to consent to the opening of the road, and did not agree with the county as to the damages; whereupon the Commissioners' Court proceeded under the general law of the state to ascertain the value

of the land and have the road laid out across it. The proceeding need not be stated in detail, but it was not questioned as having been in conformity with the general law.

At the time of this proceeding there was in force in that county a local road law, enacted by the Legislature of the State of Texas (chap. 122, Acts of the 24th Leg., p. 213), which created a road system for Dallas County, providing elaborately for the laying out and maintenance of public roads. Sec. 11 of that law reads as follows: "Whenever it shall be necessary to occupy any land for the opening, widening, straightening or draining any road or part thereof, if the owner of said land can not agree with the court as to damages to be paid, the court may proceed to condemn the same in the same manner that a railroad company can condemn land for right of way, and the same proceedings may be had, and the same rights shall exist to each party that would exist if the proceedings were by a railroad company, except that the county shall in no case be required to give bond."

Dallas County submits the case to this court upon the following propositions: First—That section 11 of the local road law, before quoted, is unconstitutional. Second—If the provision of the 11th section is valid, then it was cumulative of the general law, and the county had the right to resort to either.

The proposition that sec. 11 of the local road law for Dallas County is unconstitutional, is predicated upon the following clauses of our state Constitution: Article III, section 56, subdivision 5: "The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law authorizing the laying out, opening, altering or maintaining of roads, highways, streets or alleys." Article XI, section 2: "The laying out, construction and repairing of county roads, shall be provided for by general laws." It can not be denied that the local law in question is in conflict with those provisions of the Constitution, and would be void if it were not for the following provision: "The Legislature may also authorize an additional annual ad valorem tax to be levied and collected for the further maintenance of the public roads; provided, that a majority of the qualified property taxpaying voters of the county, voting at an election to be held for that purpose, shall vote such tax, not to exceed fifteen cents on the one hundred dollars' valuation of the property subject to taxation in such county. And the Legislature may pass local laws for the maintenance of public roads and highways without the local notice required for special or local laws" (Art. VIII, sec. 9).

The validity of the local law for Dallas County depends upon the meaning of the phrase, "maintenance of public roads," as used in the paragraph of the Constitution last quoted. The literal meaning of the word "maintenance" would not include the laying out or construction of a road, but would relate to the repair and improvement of roads already laid out and constructed. In Article III, section 56, subdivision 5, of the Constitution, the different stages in the preparation and construction of a road are enumerated, and by the use of the words "opening, laying out, altering," the word "maintaining" is restricted to its literal meaning; it could not have been intended to embrace in

it that which was otherwise expressed. But the paragraph of section 9, article VIII, above quoted, was not a part of the original section; it was added by amendment in the year 1890, for the evident purpose of conferring upon counties the power to lay out, construct and maintain, better systems of public highways than they were able to do under the restricted taxation before provided for; and in view of this purpose the rule of construction applicable to the language used is stated by Mr. Sutherland, as follows: "The mere literal construction of a section in a statute ought not to prevail if it is opposed to the intention of the Legislature apparent by the statute; and if the words are sufficiently flexible to admit of some other construction, it is to be adopted to effectuate that intention. . . . The particular inquiry is not what is the abstract force of the words, or what they may comprehend, but in what sense they were intended to be used as they are found in the act. The sense in which they were intended to be used furnishes the rule of interpretation, and this is to be collected from the context; a narrow or more extended meaning is to be given according to the intention thus indicated" (Suth. Stat. Const., sec. 246).

The meaning of the word "maintenance," in the clause of the Constitution whereby authority is given to pass local road laws for a particular county, and the same word as used in the preceding part of that paragraph must be the same, because they concern the same subject-matter and express the same purpose. If we give to the word "maintenance" its literal meaning in this part of the paragraph, "the Legislature may also authorize any additional annual ad valorem tax to be levied and collected for the further maintenance of public roads," then the money derived from the tax so levied would constitute a special fund for the repair of public roads, and in keeping them in order after they were constructed, and could not be used for the purpose of laying out and constructing such highways. It would be a narrow interpretation to hold that the people adopting this amendment to the Constitution, had in view to provide a fund to be used only in repairing roads already laid out, instead of the evident and broader policy to create a better and more extensive system of public highways. It could not have been the intention thus to restrict the use of the fund, and to create such confusion and embarrassment in the handling and disbursement of the funds of the county as would arise from such construction. The purpose of the Legislature in making the amendment was to increase the capacity of the county to maintain a system of public roads, and the word "maintenance" must be held to include all of the things necessary to be done to accomplish that purpose. Recognizing that differences existed and would exist in the financial conditions, the character of the soil and otherwise in the counties, which would make it necessary for the different counties to use different methods in maintaining public highways, the last clause of sec. 9 was added to authorize the Legislature to meet the varying needs of the counties by local laws. The thing to be accomplished by the local law is the same as by the general law; hence the local law must embrace the whole subject of public highways with additional powers, for it would

be unreasonable to suppose that there should be one law to govern in laying out and constructing roads which would apply to all counties, but many different laws to regulate only the repair of public roads. This question was before the Court of Civil Appeals at Dallas in the case of Smith v. Grayson County, 44 S. W., 921, in which that court held that the word "maintenance" should be construed as authorizing the inauguration of a system of roads in the county. The application for writ of error was made to this court and refused. We conclude that the authority conferred upon the legislature to "pass local laws for the maintenance of public roads," etc., authorizes that body to confer upon a county power to do everything to which the taxes raised for the purpose may be lawfully applied, and that the 11th section of the local road law for Dallas County is valid.

It is claimed that, if section 11 of the law be valid, still the county had the right to condemn under either the general or the special law; but section 15 of the local law provides: "This act shall be taken notice of by all courts in the same manner as the general law of the state on the subject of roads and bridges, when not in conflict therewith; but in case of conflict, this act shall control as to Dallas, Lamar and Medina counties." The provisions of section 11 of the local law are so different from the general law upon that point that the one can not be cumulative of the other; therefore, the local law must govern. The local law being in force in Dallas County, the provisions of the general law were inoperative in that county; hence the condemnation proceedings were without authority and void, and conferred no right upon the county to the land so taken. It is therefore ordered that the judgment of the Court of Civil Appeals be in all things affirmed.

*Affirmed.*