### COMMISSIONERS' COURT OF LIMESTONE COUNTY v. GARRETT et al. (No. 296–3581.)

(Commission of Appeals of Texas, Section B. March 29, 1922.)

Error to Court of Civil Appeals of Fifth Supreme Judicial District.

On motion for rehearing. Motion overruled.

For former opinions, see 230 S. W. 1010; 236 S. W. 970.

C. S. & J. E. Bradley, of Groesbeck, for plaintiff in error.

Rich'd Mays, of Corsicana, and A. B. Rennolds, of Mexia, for defendants in error.

HAMILTON, J. In this case, the Attorney General of Texas has filed a motion for rehearing in behalf of defendant in error, Garrett. None has been filed by attorneys for Garrett. The Attorney General's brief advances no views and cites no authorities of the Supreme Court which we had not already considered in arriving at the conclusions embodied in our opinion in this case. After thorough consideration of the Attorney General's motion, we do not deem it necessary to change or add to the opinion as originally written.

The opinion as written does not affect any school district of Texas, nor does it affect the power of the Legislature to pass special or local laws governing such districts, for the reason that the Constitution authorizes the Legislature to pass laws "for the management and control of the public school or schools of such districts."

"The Legislature may also provide for the formation of school districts by general or special law, without the local notice required in other cases of special legislation, and all such school districts, whether created by general or special law, may embrace parts of two or more counties. And the Legislature shall be authorized to pass laws for the assessment and collection of taxes in all said districts, and for the management and control of the public school or schools of such district, whether such districts are composed of territory wholly within a county or in parts of two or more counties." Section 3, art. 7, Constitution of Texas.

But there is no such provision concerning roads. The clause of the Constitution, "And the Legislature may pass local laws for the maintenance of the public roads and highways, without the local notice required for special or local laws" (article 8, § 9), is embodied in a section providing for taxation, and has been construed by the Supreme Court "to authorize the Legislature to confer upon a county power to do everything to which the taxes raised for the purpose may be lawfully applied." Dallas County v. Plowman, 99 Tex. 512, 91 S. W. 222. The taxes referred to are annual ad valorem taxes, to be levied and collected for the further maintenance of the public roads. The constitutional provision pertinent is as follows:

"The Legislature may also authorize an additional annual ad valorem tax to be levied and collected for the further maintenance of the public roads; provided, that a majority of the qualified property taxpaying voters of the county, voting at an election to be held for that purpose, shall vote such tax, not to exceed fifteen cents on the one hundred dollars valuation of property subject to taxation in such county. And the Legislature may pass local laws for the maintenance of the public roads and highways, without the local notice required for special or local laws." Section 9, art. 8, Const.

The contention of the motion is, in effect, that the last sentence in the above quotation authorizes the Legislature, not only "to confer upon a county power to do everything to which the taxes raised for the purpose," as provided in that section of the Constitution, "may be lawfully applied," but also authorizes a road district, acting through officers created in express contravention of article 3, § 56, to take over and control and expend the proceeds of bonds issued by virtue of section 52 of article 3 of the Constitution providing, not for "the laying out, opening, altering or maintaining of roads," nor for taxes for "further maintenance of roads," but authorizing the issuance of bonds for "the construction, maintenance, and operation of macadamized, graveled or paved roads and turnpikes, or in aid thereof," and the levy and collection of taxes "to pay the interest thereon and provide a sinking fund for the redemption thereof."

To do this the clause "and the Legislature may pass local laws for the maintenance of the public roads and highways" must be expanded, by implication, not only to confer the power on a county to do everything to which the taxes raised by virtue of section 9, art. 8, for the maintenance of roads may be lawfully applied, but it must be expanded to the extent of nullifying the clause of section 56, art. 3, providing that, "The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law * * * creating offices, or prescribing the powers and duties of officers, in counties, cities, towns," etc., and must be further expanded by implication to the extent of nullifying that clause of section 56, art. 3, prohibiting the passage of local or special acts "regulating the affairs of counties, cities, towns," etc. If by implication it authorizes the creation of officers it must likewise by implication authorize the regulation of the affairs of counties, etc., because the constitutional provision in section 56, art. 3, containing the clause prohibiting the one, also contains a clause prohibiting the other, and the Limestone County Road Law (Sp. Laws, 36th Leg. [1919] c. 74) violates both these clauses with equal temerity. It provides that—

"Said board shall have the entire and exclusive charge, control and management of all matters pertaining or relating to the laying out and constructing of the permanent roads of the county or such political subdivision or defined district, for which the bond issue was voted."

This includes the right and power of making contracts for the construction of such roads whereas article 639 of the Revised Civil Statutes, a part of the act authorizing the issuance of bonds "for the purpose of constructing and maintaining and operating macadamized, graveled or paved roads" specifically confers upon the commissioners' court the authority to make contracts and to superintend the work done in carrying out these purposes, in language as follows:

"The county commissioner, in whose commissioner's precinct such political subdivision or defined district, now or hereafter to be described and defined, is located, shall be ex officio road superintendent of said road district, with power to contract for and in behalf of such road district; provided, such contract shall not exceed the sum of fifty dollars, which shall be approved by the commissioners' court, and all contracts exceeding the sum of fifty dollars shall be awarded by the entire court, which contracts shall be binding on said county, political subdivision or defined district."

If this court should construe the last sentence of section 9, art. 8, as implying such powers in the Legislature, then the Legislature may, by local or special act, create, in a given county, any number of special offices and officers and transfer to them the powers now attaching to the commissioners' court by general law. The result would be a bewildering variety of officers and powers of officers, created and clothed with authority without notice or knowledge of the great mass of the citizens of such counties.

We are familiar with the well-established rule of construction that when one section of the Constitution expresses a general intention to do a particular thing, and another section expresses a particular intention incompatible with the general intention, the particular intention is to be considered in the nature of an exception, but section 9 of article 8 expresses no intention incompatible with the intention of those parts of section 56 of article 3 prohibiting the Legislature from creating offices * * * in counties, cities, towns, etc., and from regulating the affairs thereof by local or special act.

The Attorney General, in his brief, refers to the case of City of Dallas v. Western Electric Co., 83 Tex. 243, 18 S. W. 552. The opinion in that case was delivered in 1892. At that time, and at the time the act granting the charter of the city of Dallas, construed therein, was passed by the Legislature, the Constitution provided that—

"Cities having more than ten thousand inhabitants may have their charters granted or amended by special act of the Legislature." Superseded section 5, art. 11.

This carried with it, by necessary implication, the right and power of the Legislature to create officers for that city because no government can be created and operated without officers, and it, furthermore, empowered the Legislature to pass a charter for Dallas with any provision necessary to the proper administration of its financial affairs. These affairs, in a great city of more than 10,000 inhabitants, are of vital importance to the efficient administration of every department of the city government, and the power to grant the charter clearly carried with it the power to regulate such affairs by provisions of the charter. The power to grant the charter carried with it the power to do everything of propriety in the creation of a city government and as equally clearly nullified every other provision of the Constitution denying such power.

There was no necessity for creating the offices provided by the act under consideration. The official machinery consisting of the county judge and other members of the commissioners' court was ample to do everything to be done in the construction, maintenance, and operation of the macadamized, graveled, or paved roads of Limestone county, and the statute that provided for the issuance of the bonds for that purpose in pursuance of section 52 of article 3, and not by virtue of section 9 of article 8, specifically provided that that court should have all the powers given to the mass of officers created

by the act. Under the guise of necessity the Legislature had no power to expand the meaning of the provision authorizing it to pass local laws to maintain public roads and highways in such manner as to nullify the express provisions of the Constitution, prohibiting creation of officers and regulating the affairs of counties. If there had been no such provisions in the Constitution, it would have been stretching the doctrine of implied powers to the breaking point to have construed the closing sentence of section 9 of article 8 so as to authorize creation of officers and regulating the affairs of the county, and, with those clauses of section 56, art. 3, expressly forbidding the Legislature to do either by local or special act, in existence at the time that sentence was added by amendment, to so construe it would violate every canon of constitutional construction concerning implied powers. If the amendment had been intended to nullify those clauses of section 56, article 3, it would have been a simple matter to have added to it, at the time of its submission, some such words as, "and provide for the management and control thereof." But that was not done, and there is an absolute want of authority on the part of the Legislature to pass the Limestone County Road Law creating the 42 offices, investing the county auditor with the authority to act with each board, and stripping the commissioners' court of all power conferred by article 639 and other articles of the statute, and transferring that power to those 42 officers and the county judge and auditor.

We recommend that the motion for rehearing be overruled.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as a judgment of the Supreme Court.