## AUSTIN BROS. v. PATTON et al.*
## (No. 8196.)

(Court of Civil Appeals of Texas. Galveston.
Nov. 9, 1922. Rehearing Denied
Dec. 7, 1922.)

**1. Counties �köö170(3)—Answer in suit against county on road warrants setting up illegality held good as against general demurrer.**

In an action on county road warrants, an answer pleading a special road law for defendant county (Sp. Acts 34th Leg. [1915] c. 46) placing supervision of roads and bridges in the hands of an advisory board, and providing for apportionment of money paid into the general road and bridge fund to the special road districts composing the county, that plaintiff knew of such special law at the time the materials were sold, that the warrants were duly registered and would be paid in the regular order of registration, that when the warrants were issued no provision for the payment was made by a tax levy, and that it was not contemplated that they would be paid out of the current revenues for the year, and that they were void, *held* to set up defenses good as against plaintiff's general demurrer.

**2. Highways �köö97¾, New, vol. 16A Key-No. Series—Passage of local road law for county supersedes general road law conflicting therewith.**

Where the Legislature, under Const. art. 8, § 9, authorizing the passage of local laws for the construction and maintenance of public roads and highways of the counties, passes such local road laws, the law supersedes so much of the then existing general road law governing the construction and maintenance of roads in the locality for which the local law was passed as, is in conflict therewith.

**3. Statutes �köö97(2)—Houston county road law as to supervision of roads and apportionment and expenditure of funds, etc., held not unconstitutional.**

The local road law of Houston county (Sp. Acts 34th Leg. [1915] c. 46), placing supervision of all roads and bridges in special road districts created thereby in the hands of a supervisory board, and providing for apportionment to the special road districts of all money paid into the general road and bridge fund of the county, such money to be expended on the roads situated in each of the districts, and providing for separate accounting thereof, does not violate any constitutional provision.

**4. Highways �köö97¾, New, vol. 16A Key-No. Series—County road law held to repeal general road law of state.**

The Houston county road law, creating a special road law for such county, and furnishing a complete system and mode of procedure, repeals, as to such county, the general road law of the state.

**5. Counties �köö57—Order of commissioners' court approving accounts and issuing illegal road warrants held subject to collateral attack.**

Where a county commissioners' court approved accounts for the purchase of road materials when the indebtedness against the road and bridge fund exceeded the taxes collectible for road purposes, and issued road warrants in payment without providing for payment from funds for the current year, the act of the court was in excess of its jurisdiction and in violation of Const. art. 8, § 9, and its order, being void, was subject to collateral attack by answer of the county setting up such invalidity when sued on the warrants.

**6. Appeal and error �köö1010(1)—Duty of appellate court to leave judgment undisturbed unless contrary to law or unsupported by sufficient evidence.**

Unless the appellate court can say that the judgment of the trial court is contrary to law or unsupported by sufficient evidence, its duty is to leave the judgment undisturbed.

**7. Counties �köö170(1)—In suit on road warrants no recovery on quantum valebant for materials purchased by county in violation of law.**

In an action on county road warrants, refusal to render judgment on quantum valebant for materials purchased was not error, where the material was purchased in violation of law; the purchase price in such case not being subject to be made a legal charge against the county.

**8. Mandamus �köö10—Writ will not lie to compel county to levy tax for road warrants beyond constitutional limit.**

In an action on county road warrants, plaintiffs could not compel defendants by mandamus to appropriate money to pay the warrants, or to make provision for their payment, where it appeared that the county had already levied the entire authorized road and bridge tax.

Appeal from District Court, Houston County; W. R. Bishop, Judge.

Suit by Austin Bros., a corporation, against Nat Patton and others. Judgment for defendants, and plaintiff appeals. Affirmed.

W. M. Harris and W. H. Graham, both of Dallas, for appellant.

B. F. Dent and Earle Porter Adams, both of Crockett, for appellees.

LANE, J. This suit was originally brought by Austin Bros., a corporation, against Houston county, Tex., Nat Patton, as county judge, the four county commissioners, the treasurer and tax assessor of said county as such officers. Recovery was sought against the county for the sum found to be due upon 21 warrants issued by the county aggregating about $7,000; for writ of injunction restraining the officers composing the commissioners' court of said county from approving and allowing any claims payable out of the road and bridge fund of said county, or any subdivision thereof; restraining the treasurer from registering or paying any claim payable out of said road and bridge fund until the debt sued for had first been paid, and for a writ of mandamus against the commissioners' court to compel it to appropriate out of the

moneys collected and to be collected from taxes already assessed for roads and bridges a sufficient sum to pay the plaintiff's claim, and that in the event a sufficient sum to pay said claim could not be realized from such moneys then that said court be required to levy a special tax out of the 15 cents allowable under the Constitution to be taxed for road and bridge purposes sufficient to pay plaintiff's claim.

Upon trial judgment was rendered for the defendants and certain intervening parties. Upon appeal from such judgment this court, by an opinion to be found in 226 S. W. 702, reversed the same and remanded the cause, with instructions to retry the same in accordance with the views expressed in said opinion.

On the 11th day of April, 1921, after the cause had been so remanded, the plaintiff, Austin Bros., filed its first amended original petition, and thereby alleged the sale, delivery, acceptance, and use of certain machinery and material to and by Houston county, and the subsequent issuance and delivery of the warrants sued on in payment for such machinery and material. It alleged that such machinery and material was so sold and delivered in the years 1915 and 1916. It further alleged as follows:

"That in each and all of the aforesaid warrants where said warrants provide the number of the fund out of which they are to be paid it refers to the general and bridge fund of said fund created by virtue of the constitutional 15-cent road and bridge tax which the commissioners' court of said county may appropriate for road and bridge purposes within its discretion, and that prior to the issuance of said warrants said court determined that it would apportion the road and bridge money among the several commissioners' precincts of said county, so as to equalize the money among the several precincts in conformity as near as possible with the taxes paid said county by said several commissioners' precincts; that this was done by said court, acting under and by virtue of a purported special road law of said county granting such authority, but in this connection plaintiff says that it did not agree that said warrants should be paid only out of such funds, and said warrants do not provide that they shall be payable only out of such funds, and plaintiff further alleges the fact that said warrants, providing that they were to be paid out of a particular fund, related only to the time of payment, and not to the validity of the claims of plaintiff or its assignor, and that a reasonable time has elapsed since the issuance and delivery of said warrants, and they have not been paid out of said fund, and plaintiff is now entitled to have them paid out of said fund, and plaintiff is now entitled to have them paid out of any fund in the hands of the county or that is lawfully applicable thereto, and plaintiff is not now restricted to payment out of the several funds named in said warrants.

"That, at the time said county issued and delivered each and all of the aforesaid obligations, they were issued and delivered in pay-

ment of current expenses which were proper and lawful charges against the road and bridge fund of said county, and were for material and supplies sold and delivered to the county for the purpose of constructing, repairing, and maintaining the public roads and bridges in said county; that, at the time said bills of goods were sold and delivered to said county, it was within the reasonable contemplation of the parties to such sales that the prices charged therefor would be paid out of the current revenues in the road and bridge fund of said county then on hand or coming into the road and bridge fund from taxation and other sources during and for the year in which such material and supplies were sold and delivered; that there was a fund in each of the years in which the aforesaid warrants were issued properly coming into said road and bridge fund sufficient to pay all of said warrants in the year in which they were issued and delivered, and in which such sales and purchases were made to meet all of said obligations issued by said county during said years; and that the funds with which said warrants were to be paid and out of which they could have been paid were within the immediate control of said county, and it was then and there contemplated that said claims should be paid out of revenues coming into the hands of said county during the year in which such obligations were incurred, or out of revenues collected from taxation and otherwise for said years, and none of said obligations constituted 'debts' within the meaning of the Constitution and laws of Texas.

"That, in the event any of said warrants herein sued on shall be by the court held invalid, illegal, or unenforceable for any reason whatever, then plaintiff says that the defendant county, lawfully acting through its commissioners' court, ordered the material and supplies set forth above, and the same were delivered to and used by the county for lawful purposes, and the county got the benefit of said material and supplies, and that the prices charged therefor by the plaintiff and its assignor were the usual, reasonable, and customary charges for such material and supplies at that time, and were the prices which the defendant county contracted to pay therefor, by reason of all of which facts the plaintiff is entitled to a judgment against said county upon quantum valebant for any and all such sums of money which the court shall find and determine, if any, of said warrants are so invalid, illegal, or unenforceable, if any, and that the defendant county, in equity and good conscience, should pay plaintiff the reasonable value of said material and supplies as aforesaid.

"That, in selling and delivering said material and supplies to said county, it and its assignor did not agree that any of said obligations should be made charges upon the revenues of future years, but after the defendant county got said material and supplies and used the same, then of its own accord it issued some of said warrants payable at a future date, but plaintiff never at any time agreed that any of said warrants should be made payable out of the revenues of future years, and in this connection plaintiff says that, although the majority of said warrants issued in 1916 were made payable in February, 1917, it was intend-

ed that each and all of them should be payable out of the revenue derived from taxation and otherwise during the year of 1916, and the due dates of said warrants were made in February 1917, because it was then a well-known fact by the county that the majority of the 1916 revenues would not come into the hands of the county treasurer until after February 1, 1917.

"That, in the event any judgment shall be rendered in its favor herein, it will have no plain and adequate remedy at law to enforce payment of the same, because the property of the defendant county is not subject to execution, and that it will be necessary for plaintiff to have a writ of mandamus issued, directed to the proper officers of said county, requiring them to make proper provision for the payment of any such judgment, if any, in the manner provided by law."

The plaintiff prayed for judgment against the county for the aggregate sum due upon all of the 21 warrants, together with interest on the respective warrants from their respective dates.

It prayed in the alternative that, in the event the court should hold that one or more of the warrants were invalid and unforceable for any reason, then that judgment be rendered in its favor—

"for the several sums of money represented by said warrants, as the reasonable value of the material and supplies sold and delivered by plaintiff and its assignor to said defendant county, and, in any event, that if judgment is rendered in favor of plaintiff for any sum of money plaintiff be awarded a writ of mandamus directed to the honorable tax assessor and to his successor in office, directing him to assess all of the taxable property in said county, if necessary, at its full and true value in money in the first year after any judgment in this suit in behalf of plaintiff becomes final, and that plaintiff further be awarded a writ of mandamus against the honorable county judge and the four county commissioners of the defendant county, and to their successor or successors in office, commanding them and each of them to approve said assessor's tax rolls as above described on a basis of the full and true value of all taxable property in said county, when it sits as a board of equalization in the first year after this judgment becomes final, and that, after so approving said tax rolls, said court be required to levy a tax against all taxable property in said county out of the road and bridge fund in a sufficient amount to raise the money with which to pay off and discharge any judgment rendered herein against said county, and for such other orders, decrees, and judgments as plaintiff may be entitled to as against said officers, and further that plaintiff be awarded a writ of mandamus against the defendant treasurer and his successor or successors in office commanding him that, as soon as the moneys are collected and turned over to him by the tax collector, he at once remit the same, or so much thereof as may be necessary, to plaintiff to pay off and discharge any such judgment in favor of plaintiff."

245 S.W.—63

The defendant the county of Houston and the officers sued pleaded the special road law for Houston county passed by the Thirty-Fourth Legislature of 1915 (Acts 34th Leg. 149), which among other things, provides as follows:

"Sec. 5. The supervision and control of all roads and bridges situated in any special road district now or hereafter created shall be placed in the hands of an advisory board, consisting of five resident citizens residing in each of said districts, who shall be selected by the commissioners' court at the first regular meeting after the passage of this act, and annually thereafter, such advisory board to serve without compensation. Such advisory board to have the same jurisdiction and control over the roads and bridges in the respective districts in which each of said advisory boards resides as are conferred on the commissioners' court of Houston county as supervisors of the public roads and bridges. * * *

"Sec. 8. * * * And all money paid into the general road and bridge fund of Houston county on any property * * * in any special road district, now or hereafter created, shall be apportioned by the commissioners' court to each of such districts in which same was so paid, and shall be entered to the credit of each of such districts in a separate account, to be kept by the county treasurer for each of said districts, and the money thus arising shall be expended upon the roads situated in each of said districts; and, provided further, that the remainder of the money paid into the general road and bridge funds of said county during each year on any property situated outside of any such road districts shall be apportioned to the respective commissioners' precincts outside of said road districts in proportion to the amount of taxes paid on property situated in each of said commissioners' precincts, and the county treasurer or said county shall keep a separate and distinct account of said funds for each of said commissioners' precincts, as provided above for keeping the accounts for said special road districts, and the money so apportioned to each of said commissioners' precincts shall be expended upon the roads situated in each of said commissioners' precincts. * * *"

And for further answer they alleged:

That ever since said road law took effect the roads and bridges of said county had been worked, repaired, and improved under the provisions of same, and that the debts and warrants upon which plaintiff is suing were created and issued under the operation of such special road law and by virtue thereof, and that such warrants purports to be and were in fact drawn and issued against the special road and bridge fund of commissioners' precincts Nos. 1, 3, and 4, as created under such special road law, and that all contracts of plaintiff by or through which the indebtedness sued on was created were made by plaintiff with full knowledge of the existence of such special law, and that the provisions of said law were acquiesced in by plaintiff at the time said contracts were made.

"That, anterior to the creation of the debts herein sued on, the Houston county road dis-

trict No. 3 and the Houston county road district No. 1 were duly and legally created.

"That the materials and supplies which the warrants sued on were intended to cover, if such material and supplies were furnished defendant Houston county by plaintiff and those under whom plaintiff claims, and which defendants deny and demand strict proof of same, were used; if at all, by commissioners' precincts Nos. 1, 3 and 4, and not upon the roads or bridges situated in commissioners' precinct No. 2, or upon Houston county road district No. 1 and Houston county road district No. 3.

"That since the enactment of said special road law as amended in 1915 all funds coming into the treasury of Houston county have been appropriated and prorated and apportioned to the respective commissioners' precincts and to Houston county road district No. 1 and Houston county road district No. 3 in the manner provided by such law, and that all of such funds placed to the credit of commissioners' precinct Nos. 1, 3, and 4 have been since that time, and are now, being expended by the county treasurer of Houston county in payment of all warrants against such funds, respectively, which warrants have been duly registered, including the warrants herein sued on, and that all such warrants have been and are now being paid in their regular order of registration.

"That at the several times at which plaintiff alleges the warrants herein sued on were issued and were registered, the indebtedness by them evidenced, together with other indebtedness then outstanding against the road and bridge funds of Houston county, as same were constituted and kept, and against the road and bridge fund of Houston county, required a tax greatly in excess of taxes permitted to be levied under the Constitution of the state of Texas, and that at the time such warrants were issued no provision was made for their payment by the levy of a tax, and it was not contemplated that they be paid out of the current revenues for the year in which they were issued, or otherwise, and same are illegal and void, and such warrants were not to be paid out of any fund within the immediate control of Houston county, at the time of their issuance, and were to be paid out of county funds· in future years."

By their supplemental answer the defendants denied generally the allegations of the plaintiff's amended petition, and, in reply to plaintiff's plea of quantum valebant, they alleged that plaintiff's suit as originally brought and prosecuted was a suit upon the warrants only, and not a suit for the value or purchase price of the material sold and delivered to Houston county, and therefore so much of plaintiff's cause of action as is set up by its said plea of quantum valebant is a new cause of action, set up for the first time on the 11th day of April, 1921, and that such new cause of action, if any such ever existed, was at the time of filing said amended petition barred by the statutes of limitation of two and four years. Their prayer was for the cancellation of all the warrants sued on.

Dave Leaverton and others, constituting the advisory boards for special road districts 1 and 3, intervened and pleaded the special road law for Houston county, as did the defendants. They also alleged the organization of special road districts 1 and 3 and resisted the writs of injunction and mandamus sought by plaintiff. However, as no assault is being made upon the judgment rendered in their favor, it becomes unnecessary to further state in detail the substance of their· pleadings.

By its supplemental petition the plaintiff demurred generally to the answers of the defendants and interveners, and specially excepted to said answers as follows:

(1) To those parts of said answers wherein they plead the special road law of Houston county, because that part of it which authorizes the commissioners' court to prorate the road and bridge fund to the commissioners' precincts contravenes section 9 of article 8 of the Constitution of Texas, in that the Constitution authorizes a tax of 15 cents on the $100 valuation of all taxable property in said county each year for road and bridge purposes, and said tax is a county tax, and is not a tax which any political subdivision of said county can take advantage of and use and appropriate in a manner which said special road law provides that it shall be done, and hence the allegations with reference to the proration of said road and bridge fund constitute no defense to the warrants sued on.

(2) To those parts attacking the validity of the warrants issued by the commissioners' court, upon the ground that such attack constituted a collateral attack upon judgments of said court.

(3) To those parts wherein they plead the statutes of limitation of two and four years, upon the ground that such plea was too vague and indefinite.

The plaintiff also denied generally the allegations of said answers.

The case was tried before the court without a jury, and, after overruling the demurrers and exceptions of all parties and hearing the evidence adduced, the court rendered judgment in favor of plaintiff for the sums evidenced by warrants Nos. 497 for $505.30, 495 for $439.20, 494 for $400.56, 888 for $532, 877 for $475.60, ' 886 for $100, and 844 for $460.80, sued on, aggregating the sum of $2,-913.46, together with interest on said amount as provided in said warrants, aggregating the further sum of $395.09, and for a total sum of $3,308.55, but denied a recovery upon the remaining warrants sued upon, 14 in number, and by said judgment decreed that said 14 warrants be canceled and held for naught. Said judgment also contains the following recitals:

"It is further ordered, adjudged, and decreed that the writs of mandamus prayed for by the plaintiff against the county assessor, the county collector, the county treasurer, and the commissioners' court be, and the same are here,

now in all things denied, save and except that the county treasurer and his successor or successors in office are ordered to pay off and discharge this judgment out of any fund coming into his hands as a result of taxation on taxable property in commissioners' precincts Nos. 1, 3, and 4 outside of and not a part of special road districts Nos. 1 and 3, known as Crockett and Grapeland special road districts, and that same be paid in the order as registered in the office of the treasurer of Houston county, in the proportion which the total amount of each warrant and the interest thereon payable out of each of said funds bears to the whole amount of this judgment. * * *

"It is further ordered, adjudged, and decreed by the court, that the defendant Houston county pay all costs of this suit. Such costs are here now taxed against the defendant county.

"It is further ordered, adjudged, and decreed by the court that the interveners take nothing as against the plaintiff, except as provided in this judgment, that the taxes collected from properties situated in special road districts Nos. 1 and 3, known as Crockett and Grapeland special road districts, not be subject to distribution under this judgment, and that the plaintiff take nothing as against the interveners."

From so much of the judgment as denied recovery to the plaintiff upon said 14 warrants and from that part thereof denying its prayer for a writ of mandamus, the plaintiff has appealed.

Appellees by their cross-assignment complain of so much of said judgment as is against Houston county.

[1] By its first assignment appellant insists that the trial court erred in overruling its general demurrer to the answers of the defendant and interveners. The defenses set up in the answers to which the general demurrer is addressed are substantially the same as those appearing in the answers which were considered by this court on a former appeal of this case. On that appeal we held that said answers were good as against a general demurrer. See 226 S. W. 702. We see no reason now to overrule such holding. The assignment is overruled.

By its second assignment the plaintiff insists that the trial court erred in overruling its special exception addressed to that portion of the answers of defendant and interveners wherein they pleaded the special road law for Houston county, in that said law was unconstitutional, and the fact of its existence therefore constitutes no defense to plaintiff's cause of action; that said law is unconstitutional in that it violates section 9 of article 8 of the Constitution of Texas, in that it provides that the funds derived from the constitutional tax of 15 cents which may be levied and collected for the construction and maintainance of roads and bridges shall be apportioned to the several commissioners' precincts of Houston county, notwithstanding such funds are, by reason of the

provisions of the Constitution, county road funds, and not funds of any political subdivision of said county, and the Legislature therefore had no power to authorize the apportionment of such funds to the several precincts of Houston county in derogation of the rights of creditors of said county.

[2, 3] We do not think the court erred in overruling the exception. The Legislature is, by the provision of article 8, § 9, of the Constitution, expressly authorized to pass local laws for the construction and maintenance of the public roads and highways of the counties of this state. When the Legislature, under this express authority of the Constitution, passes such local road laws, such law supersedes so much of the then existing general road law governing the construction and maintenance of roads in the locality for which the local law was passed. as is in conflict therewith; said local and special law being the latest expression of the legislative will. Dallas County v. Plowman, 99 Tex. 509, 91 S. W. 221, and authorities there cited. There is no constitutional inhibition forbidding the passage of a local road law containing the provisions of the Houston county road law complained of by appellant. Dallas County v. Plowman, 99 Tex. 509, 91 S. W. 221; Bodenheim v. Lightfoot, 103 Tex. 639, 132 S. W. 468; Smith v. County, 18 Tex. Civ. App. 153, 44 S. W. 921.

In the case of Dallas County v. Plowman, supra, Chief Justice Brown, speaking for the Supreme Court, said:

"We conclude that the authority conferred upon the Legislature to 'pass local laws for the maintenance of public roads,' etc., authorizes that body to confer upon a county power to do every thing to which taxes raised for the purpose may be lawfully applied."

In Bodenheim v. Lightfoot, supra, by Chief Justice Gaines, it is said:

"The Legislature is a co-ordinate department of the state government, and it is their power and duty to pass upon the validity of all laws which they pass; and hence, when they have passed a law, they affirm its constitutionality, and the courts will not hold they have made a mistake, unless its invalidity is clearly apparent."

That the local road law of Houston county now under consideration is unconstitutional does not clearly or otherwise appear to us. It therefore becomes our duty to hold that it is valid.

[4] As all the claims of the appellant against Houston county arose after the special road law for that county became effective, they must be governed by the provisions thereof. Acts 34th Leg. p. 149, creating a special road law for Houston county, being the latest expression of the legislative will

and furnishing a complete system and mode of procedure, repeals, as to that county, the general road law of the state, and after its passage the funds collected for road purposes were properly apportioned and appropriated as therein provided.

[5] By the third assignment it is insisted that the court erred in not sustaining plaintiff's second special exception to defendant's answer, because it appears from said answer that it is a collateral attack on the valid order, judgment, or decree of the commissioners' court of Houston county approving and allowing the claims of the plaintiff; there being no allegation of fraud, accident, mistake, or collusion on the part of the commissioners' court.

We think the assignment should be overruled. It was substantially alleged by defendants that at the several times the material in question was sold, and at the time the several warrants were issued and registered, the indebtedness outstanding against the road and bridge funds of Houston county was greatly in excess of the taxes which could be collected under the Constitution of Texas for road purposes, and that, notwithstanding this fact, no provision was made for the payment of plaintiff's debt by the levy of a tax, and that at the time of the creation of such debt and issuance of said warrants it was not contemplated by the parties that such indebtedness should be paid out of the road and bridge funds of the current year, or out of any funds lawfully applicable for such payment then within the control of the county or which could reasonably be expected to come into its hands as funds for the current year in which the indebtedness was created.

It was shown that at the time the material was sold for the payment of which the 14 rejected warrants were issued, and at the time of the issuance of said warrants, there were no road and bridge funds in the hands of the county available to pay the debt so created, and it was further shown that it could not have been reasonably contemplated by the parties that such indebtedness would or could be paid out of road and bridge funds then in the immediate control of the county, or out of such funds as might reasonably be expected to come under its control for the lawful payment thereof. Indeed, it was, we think, shown that the parties mutually understood and agreed that the material so sold was not to be paid out of any funds of the current year in which the same was sold, but, to the contrary, that it was to be paid for out of the taxes to be collected for future years. It was shown, we think, that the commissioners' court knew that the material in payment for which said 14 rejected warrants were issued could not be paid out of the funds which were under its control or which might be expected to come under its control

for the current year in which such material was purchased, and, so knowing, informed the representatives of plaintiff who sold the material of such financial condition of the county, and that the plaintiff would have to look for payment to funds to be collected for future years.

It is well settled that, where the commissioners' court attempts to allow and approve accounts not legally chargeable against the county, its act in so doing is an act in excess of its jurisdiction, a violation of article 8, § 9, of the Constitution, and is therefore void and may be attacked collaterally. School Trustees v. Farmer, 23 Tex. Civ. App. 39, 56 S. W. 555; Ellis v. City of Cleburne (Tex. Civ. App.) 35 S. W. 495; McKinney v. Robinson, 84 Tex. 489, at page 496, 19 S. W. 699.

There is some conflict of authority as to the conclusiveness generally of the orders and judgments of the commissioners' court, but these conflicts, we think, grow out of the interpretation placed upon the facts of the particular case to which the opinion is addressed by the several courts. But no court has held, so far as we have been able to find, that the commissioners' court can bind the county by an order or judgment approving a debt against such county made clearly in violation of the provisions of article 8, § 9, of the Constitution, or of any other law of this state. Debts incurred in violation of the Constitution are void and cannot be validated and made binding by a subsequent decree of the commissioners' court approving same. The commissioners' court may approve accounts against the county, though improperly or irregularly incurred, where it had in the first instance the authority to incur the debt, and, if it does so, such order of approval is not subject to collateral attack; but a subsequent approval of a debt incurred by it for the county in violation of article 8, § 9, of the Constitution cannot make the debt so incurred valid. In other words, if the contracting of the debt was in violation of law, such contract was void and could not thereafter be made a valid charge against the county by a subsequent approval of the same by the commissioners' court. Trustees v. Farmer, 23 Tex. Civ. App. 39, 56 S. W. 555; McKinney v. Robinson, 84 Tex. 489, 19 S. W. 699; Ellis v. City of Cleburne (Tex. Civ. App.) 35 S. W. 495.

By the fourth assignment it is insisted that the court erred in not sustaining the plaintiff's exception to so much of the answer of the defendant as pleaded the two or four year statutes of limitation as against the plaintiff's alternative prayer for judgment upon quantum valebant, in that such plea of limitation did not allege sufficient facts to show that any of the obligations sued upon were barred by the statutes of limitation.

We overrule this assignment. The plea excepted to, when considered in connection with the allegation of the plaintiff's petition, is not subject to the exception addressed thereto.

By assignments 5, 6, 7, 8, 9, and 11 it is in various forms substantially insisted that the court erred in rendering judgment canceling 14 of the warrants sued on,. in that there was no evidence to support such judgment.

[6] We are not prepared to hold that the judgment is not supported by sufficient evidence. Unless we are able to say that the judgment of the trial court is contrary to the law, or unsupported by sufficient evidence, it is our duty to leave it undisturbed. We therefore overrule the assignments.

The tenth assignment complains of the refusal of the trial court to render judgment in favor of the plaintiff upon quantum valebant.

[7] We do not agree with the contention for two reasons: (1) At the time the alternative action upon quantum valebant was first filed the same was barred by the statute of limitation pleaded by the defendant; and (2) as the material was purchased in violation of law, the purchase price thereof could not be made a legal charge against the county.

By the twelfth assignment it is contended that the court erred in refusing to award the plaintiff the mandamus relief prayed for, because without such award plaintiff was left without any remedy for the collection of the judgment rendered in its favor.

[8] This contention is not tenable. The evidence shows the county had already levied the entire 15-cent road and bridge tax for the payment, among others of the debts of the plaintiff, and by the judgment rendered it is ordered that from the tax collected from commissioners' precincts Nos. 1, 3, and 4 of Houston county said judgment should be paid.

What has been said disposes of all the assignments of the appellant, and we now come to consider the cross-assignment of appellees.

By their cross-assignment the appellees contend that the court erred in rendering judgment for the plaintiff for any sum whatever, because there was no evidence to sustain the same.

After a careful consideration of all the evidence, we have, not without some difficulty, reached the conclusion that we are unable to say that there was no evidence to sustain that part of the judgment in favor of the plaintiff, and, it therefore becomes our duty to leave the same undisturbed.

Having reached the conclusion· above expressed, the judgment of the trial court is in all things affirmed.

Affirmed.