

# THE ATTORNEY GENERAL
# OF TEXAS

AUSTIN 11, TEXAS

GROVER SELLERS
XXXXXXXXXXXXXXX
ATTORNEY GENERAL

Honorable D. C. Greer
State Highway Engineer
Austin, Texas

Dear Sir:

Opinion No. O-5790
Re: State Highway Department
Liability for negligent opera-
tion of Ferry.

Your letter of January 6, 1944, addressed to the Attor-
ney General, has been received. The pertinent facts stated in
your letter are as follows:

"On Nov. 6, 1943, the motor ferry 'Jefferson'
operated by the Texas Highway Department between
Galveston Island and Port Boliver was blown by a
storm into the cluster piling at the north side
of the entrance to the landing on the Bolivar
side. The impact was great enough to cause all
vehicles parked and blocked on the deck of the
boat to move forward, resulting in damage to three
vehicles. A claim has been filed with the Depart-
ment for damages to one of the motor vehicles in
the sum of $136.83 by the Cook Paint & Varnish
Company of Ft. Worth.     ......Will you please ad-
vise me if the Texas Highway Department is liable
to the Cook Paint & Varnish Company for the dam-
ages to the vehicle resulting from the incident
outlined above and if so what procedure must be
followed by the Cook Paint & Varnish Company to
effect collection of their claim?"

The application of the law in regard to this State of
facts hinges on the question as to whether or not the State,
by and through its agency the Texas Highway Department, was
performing a governmental function or one merely industrial or
proprietary in character, in the operations of the ferry in
question.

In the case of State vs. Elliott, 212 S.W. 695, decided
in 1919 by the Galveston Court of Civil Appeals and in which a
Writ of Error was refused, it was held that the State in the
operation of a railroad was performing an industrial or proprie-
tary function and not a strict governmental one, and thereby was

liable for damages for the injury of an employee.  In this case
it was said:

> "When a state embarks in an enterprise which
> is usually carried on by individual persons or com-
> panies, it voluntarily waives its sovereign character,
> and is subject to like regulation with persons en-
> gaged in the same calling.  . . . And it is not true
> in any such broad sense as appellant contends that
> a state cannot become liable, without contract, for
> tortious conduct of those representing it.  Ordinarily
> officers and agents performing duties prescribed by
> law in the ordinary affairs of the government violate
> those laws or exceed their authority when they per-
> petrate wrongs.  For such conduct no liability of the
> state arises.  But sometimes the  officer or agent
> acts for the state, as did those in charge of this
> railroad, in doing the very things prescribed by the
> law under which he acts, in doing which he commits
> a wrong to another.  . . . . The contention that the
> state is liable in this case asserts nothing novel.
> Other states have owned railroads, canals, and other
> businesses, and have accepted the consequences of
> their ownership of the institutions and business,
> generally by statute, as in the case of Georgia with
> reference to its railroads, and of New York in
> reference to its canals.  The decisions in those
> states show that they have assumed full liability
> for all such claims as we present here.  The sugges-
> tion in appellant's argument that the ownership and
> operation of this railroad by the state constituted
> a part of the ordinary conduct of governmental
> affairs seem not to need extensive notice.  It seems
> too plain to require comment that the manager and
> those in charge of this railroad were not engaged
> in the performance of duties to the state incident
> to the conduct of its penitentiaries and care for its
> convicts.  Such an argument disregards all distinc-
> tions in government."

In the case of Brooks v. State, 68 S.W. (2d) 534, de-
cided by the Austin Court of Civil Appeals in 1934, and in which
a Writ of Error was denied, it was held that the State was not
liable for injuries received by an employee of the State Highway
Department while in the employ of said department, such injuries
being caused by the negligence of a fellow-employee while they
both were engaged in repairing a state highway, the opinion
stating that:

"It is now settled that the location, designation, construction, and maintenance of state higwways by the highway department as an agency of the state is a governmental function.  It is likewise settled that the state is not liable for the torts or negligence of its officers, agents, or servants engaged in the performance of a governmental function, unless it has expressly assumed such liability.  . . . Appellant relies in large measure on the case of State v. Elliott (Tex. Civ. App.) 212 S.W. 695,699, wherein a recovery against the state was affirmed for damages growing out of the operation by the state of a railroad.  This recovery was based clearly, we think, upon the principle that the operation of such enterprise was not a governmental function, but industrial or proprietary in character; and the holding in that case is not in derogation of the well-established rules relating to strictly governmental functions such as the one here involved.  It does not, therefore, control the issues here presented."

In the case of Martin v. State, 88 S.W. (2d) 131, it was decided by the El Paso Court of Civil Appeals in 1935 that a highway worker injured by dynamite blast set off during lunch hour, contrary to rule and custom, was not entitled to recover against State and Highway Commission on theory of breach of contractual duty to furnish safe place to work.  This case and an earlier case cited therein, State v. McKinney, 76 S.W. (2d) 556, follow Brooks v. State, supra, and they all involve actual repair and maintenance of a highway and the injured parties were hurt by fellow-employees, but as the controlling factor is the capacity in which the State acted the principle of law involved extends to the class of litigation involved herein.

In 1933 by H.B. No. 196 of Gen. Laws, 43rd Leg. 1st Called Session, the Legislature authorized the State Highway Department to purchase or construct, and maintain, operate and control ferries on certain waterways where the ferries connect designated state highways, and the ferry in question is operated under and by virtue of this authority.  There is no expressed assumption of liability on the part of the State in regard to such power.

If the operation of this ferry by the State comes under the term "maintenance of a highway", by reason of connecting the two ends of the highway and allowing traffic to continue across same, then it would be reasonable to assume that in the operation of the ferry the State is engaged in the discharge of a governmental function.  The Texas Supreme Court held in the case of

Dallas County v. Plowman, 91 S.W. 221, in defining the word "maintenance", as used in a tax law, as follows:

> "The purpose of the Legislature in making the amendment was to increase the capacity of the County to maintain a system of public roads, and the word 'maintenance' must be held to include all of the things necessary to be done to accomplish that purpose."

The purpose of a highway being to allow persons to travel under their own power and control from one place on it to another with a minimum of difficulty, it certainly stands to reason that anything bridging an impassable gap in a highway, whether an immovable bridge or a movable ferry, is necessary in carrying out this purpose.

It is therefore the opinion of this department that the State in operating such ferry was engaged in the maintenance of its highway system which is a governmental function, and it is not liable to the Cook Paint & Varnish Company for any damage that may have been sustained by it due to the negligence of the State's employees in operating the said ferry. This holding renders unnecessary the answering of the last part of your question.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By s/Robert L. Lattimore, Jr.
    Robert L. Lattimore, Jr.
    Assistant

RLL:gm:wc

APPROVED JAN 28, 1944
s/Grover Sellers
ATTORNEY GENERAL OF TEXAS

Approved Opinion Committee By  s/AW  Chairman