We recommend the question be answered as indicated.

CURETON, C. J. The opinion of the Commission of Appeals answering the certified question is adopted and ordered certified to the Court of Civil Appeals.

---

**AUSTIN BROS. v. PATTON et al.**
(No. 443–3929.)

(Commission of Appeals of Texas, Section B. Nov. 24, 1926.)

**1. Constitutional law ⬉48—Statute must be clearly unconstitutional to be declared invalid.**

Statute will not be declared invalid unless its unconstitutionality is clearly apparent.

**2. Statutes ⬉94(1)—Constitution prohibits passage of local or special law regulating county affairs except as such regulation may be constitutionally authorized (Const. art. 3, § 56).**

Const. art. 3, § 56, prohibits Legislature from passing any local or special law regulating affairs of counties except as such regulation may be necessary or incidental to some other law which Legislature may constitutionally pass.

**3. Statutes ⬉68, 77(1)—Statute relating to things or persons as class is "general law," while statute relating to particular persons or things of class is "special law."**

Statute which relates to persons or things as a class is a "general law," while statute relating to particular persons or things of a class is a "special law," within constitutional prohibition.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, General Law; Special Law.]

**4. Counties ⬉24—Constitution does not prohibit Legislature from committing county business to some other agent than commissioners (Const. art. 5, § 18).**

Legislature may commit a matter of county business to some other agency than commissioners' court, under Const. art. 5, § 18.

**5. Statutes ⬉97(2)—Houston county road law as to supervision of roads and apportionment and expenditure of funds held unconstitutional as special law regulating affairs of county (Sp. Acts 34th Leg. [1915], c. 46; Rev. St. 1911, arts. 1432, 1433, 1438; Const. art. 3, § 56, art. 8, § 9).**

Local road law of Houston county (Sp. Acts 34th Leg. [1915], c. 46), placing supervision of all roads and bridges in special road districts created thereby in hands of a supervisory board and providing for apportionment to special road districts of all money paid into general road and bridge fund of county, thereby abolishing Rev. St. 1911, arts. 1432, 1433, and 1438, held violative of Const. art. 3, § 56, prohibiting local or special laws regulating affairs of counties; article 8, § 9, authorizing local laws for maintenance of roads and highways being unavailing.

**6. Statutes ⬉100(2)—Houston county road law as to supervision of roads and apportionment and expenditure of funds held unconstitutional as special law creating offices and prescribing duties of officers in counties (Sp. Acts 34th Leg. [1915], c. 46; Const. art. 3, § 56).**

Local road law of Houston county (Sp. Acts 34th Leg. [1915], c. 46) placing supervision of all roads and bridges in special road districts created thereby in hands of supervisory board, and providing for apportionment to special road districts of all money paid into general road and bridge fund of county, held violative of Const. art. 3, § 56, prohibiting local or special law creating offices or prescribing powers and duties of officers in counties, cities, etc.

**7. Counties ☞165—County road warrants held not invalid though drawn payable out of an unauthorized classification of funds (Sp. Acts 34th Leg. [1915], c. 46).**

County road warrants of Houston county, though drawn payable out of an unauthorized classification of funds by unconstitutional Houston county local road law (Sp. Acts 34th Leg. [1915], c. 46) *held* not invalid.

**8. Evidence ☞413—Unambiguous county road warrants cannot be contradicted by oral testimony.**

Unambiguous county road warrants cannot be contradicted by oral testimony as to time and means of payment.

**9. Counties ☞150(2)—Issuance of county road warrants, payable out of current funds for year in amount not beyond county's right of reasonable expectation, held not creation of "debt," within constitutional prohibition.**

Issuance of county road warrants payable out of current funds for year, then under county's immediate control in an amount not shown to have been beyond county's right of reasonable expectation, *held* not creation of a "debt," within meaning of constitutional prohibition.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Debt.]

**10. Counties ☞168(1)—County road warrants, regular on their face, create presumption that they were to be payable as therein provided.**

County road warrants, issued for purchases of a character showing upon their face to be those of ordinary expenditures and specifically promising payment at time when payment could be made only out of current funds for the year, create presumption that such was intention of all parties.

**11. Evidence ☞83(1)—Public officers are presumed to have done their duty.**

Presumption is that public officers have done their duty.

Error to Court of Civil Appeals of First Supreme Judicial District.

Suit by Austin Bros. against Nat Patton and others. Judgment for defendants was affirmed (245 S. W. 991), and plaintiff brings error. Reversed and rendered.

Wm. Harris, W. H. Graham, and Merritt & Leddy, all of Dallas, for plaintiff in error.

Dent & Adams, of Crockett, for defendants in error.

SPEER, J. That a comprehensive view of the case as presented in the Court of Civil Appeals may be had, we adopt the statement of the case made by that court:

"This suit was originally brought by Austin Bros., a corporation, against Houston county, Tex., Nat Patton, as county judge, the four county commissioners, the treasurer, and tax assessor of said county, as such officers. Recovery was sought against the county for the sum found to be due upon 21 warrants issued by the county aggregating about $7,000, for writ of injunction restraining the officers composing the commissioners' court of said county from approving and allowing any claims payable out of the road and bridge fund of said county, or any subdivision thereof, restraining the treasurer from registering or paying any claim payable out of said road and bridge fund until the debt sued for had first been paid, and for a writ of mandamus against the commissioners' court to compel it to appropriate out of the moneys collected and to be collected from taxes already assessed for roads and bridges a sufficient sum to pay the plaintiff's claim, and that in the event a sufficient sum to pay said claim could not be realized from such moneys, then that said court be required to levy a special tax out of the 15 cents allowable under the Constitution to be taxed for road and bridge purposes sufficient to pay plaintiff's claim. Upon trial judgment was rendered for the defendants and certain intervening parties. Upon appeal from such judgment this court, by an opinion to be found in 226 S. W. 702, reversed the same and remanded the cause, with instructions to retry the same in accordance with the views expressed in said opinion.

"On the 11th day of April, 1921, after the cause had been so remanded, the plaintiff, Austin Bros., filed its first amended original petition, and thereby alleged the sale, delivery, acceptance, and use of certain machinery and material to and by Houston county, and the subsequent issuance and delivery of the warrants sued on in payment for such machinery and material. It alleged that such machinery and material was so sold and delivered in the years 1915 and 1916. It further alleged as follows:

"'That in each and all of the aforesaid warrants where said warrants provide the number of the fund out of which they are to be paid it refers to the general road and bridge fund of said fund created by virtue of the constitutional 15-cent road and bridge tax which the commissioners' court of said county may appropriate for road and bridge purposes within its discretion, and that prior to the issuance of said warrants said court determined that it would apportion the road and bridge money among the several commissioners' precincts of said county, so as to equalize the money among the several precincts in conformity as near as possible with the taxes paid said county by said several commissioners' precincts; that this was done by said court, acting under and by virtue of a purported special road law of said county granting such authority, but in this connection plaintiff says that it did not agree that said warrants should be paid only out of such funds, and said warrants do not provide that they shall be payable only out of such funds, and plaintiff further alleges the fact that said warrants, providing that they were to be paid out of a particular fund, related only to the time of payment, and not to the validity of the claims of plaintiff or its assignor, and that a reasonable time has elapsed since the issuance and delivery of said warrants, and they have not been paid out of said fund, and plaintiff is now entitled to have them paid out of said fund, and plaintiff is now entitled to have them paid out of any fund in the hands of the county or that is lawfully applicable thereto, and plaintiff is

not now restricted to payment out of the several funds named in said warrants.

"'That, at the time said county issued and delivered each and all of the aforesaid obligations, they were issued and delivered in payment of current expenses which were proper and lawful charges against the road and bridge fund of said county, and were for material and supplies sold and delivered to the county for the purpose of constructing, repairing, and maintaining the public roads and bridges in said county. That at the time said bills of goods were sold and delivered to said county, it was within the reasonable contemplation of the parties to such sales that the prices charged therefor would be paid out of the current revenues in the road and bridge fund of said county then on hand or coming into the road and bridge fund from taxation and other sources during and for the year in which such material and supplies were sold and delivered. That there was a fund in each of the years in which the aforesaid warrants were issued properly coming into said road and bridge fund sufficient to pay all of said warrants in the year in which they were issued and delivered, and in which such sales and purchases were made to meet all of said obligations issued by said county during said years, and that the funds with which said warrants were to be paid and out of which they could have been paid were within the immediate control of said county, and it was then and there contemplated that said claims should be paid out of revenues coming into the hands of said county during the year in which such obligations were incurred, or out of revenues collected from taxation and otherwise for said years, and none of said obligations constituted "debts" within the meaning of the Constitution and laws of Texas.

"'That, in the event said warrants herein sued on shall be by the court held invalid, illegal, or unenforceable for any reason whatever, then plaintiff says that the defendant county, lawfully acting through its commissioners' court, ordered the material and supplies set forth above, and the same were delivered to and used by the county for lawful purposes, and the county got the benefit of said material and supplies, and that the prices charged therefor by the plaintiff and its assignor were the usual, reasonable, and customary charges for such material and supplies at that time, and were the prices which the defendant county contracted to pay therefor, by reason of all of which facts the plaintiff is entitled to a judgment against said county upon quantum valebant for any and all such sums of money which the court shall find and determine, if any, of said warrants are so invalid, illegal, or unenforceable, if any, and that the defendant county, in equity and good conscience, should pay plaintiff the reasonable value of said material and supplies as aforesaid.

"'That, in selling and delivering said material and supplies to said county, it and its assignor did not agree that any of said obligations should be made charges upon the revenues of future years, but after the defendant county got said material and supplies and used the same, then of its own accord it issued some of said warrants payable at a future date, but plaintiff never at any time agreed that any of said warrants should be made payable out of the revenues of future years, and in this connection plaintiff says that, although the majority of said warrants issued in 1916 were made payable in February, 1917, it was intended that each and all of them should be payable out of the revenue derived from taxation and otherwise during the year of 1916, and the due dates of said warrants were made in February, 1917, because it was then a well-known fact by the county that the majority of the 1916 revenues would not come into the hands of the county treasurer until after February 1, 1917.

"'That, in the event any judgment shall be rendered in its favor herein, it will have no plain and adequate remedy at law to enforce payment of the same, because the property of the defendant county is not subject to execution, and that it will be necessary for plaintiff to have a writ of mandamus issued, directed to the proper officers of said county, requiring them to make proper provision for the payment of any such judgment, if any, in the manner provided by law.'

"The plaintiff prayed for judgment against the county for the aggregate sum due upon all of the 21 warrants, together with interest on the respective warrants from their respective dates. It prayed in the alternative that, in the event the court should hold that one or more of the warrants were invalid and unenforceable for any reason, then that judgment be rendered in its favor 'for the several sums of money represented by said warrants, the reasonable value of the material and supplies sold and delivered by plaintiff and its assignors to said defendant county, and, in any event, that if judgment is rendered in favor of plaintiff for any sum of money plaintiff be awarded a writ of mandamus directed to the honorable tax assessor and to his successor in office, directing him to assess all of the taxable property in said county, if necessary, at its full and true value in money in the first year after any judgment in this suit in behalf of plaintiff becomes final, and that plaintiff further be awarded a writ of mandamus against the honorable county judge and the four county commissioners of the defendant county, and to their successor or successors in office, commanding them and each of them to approve said assessor's tax rolls as above described on a basis of the full and true value of all taxable property in said county, when it sits as a board of equalization in the first year after this judgment becomes final, and that, after so approving said tax rolls, said court be required to levy a tax against all taxable property in said county out of the road and bridge fund in a sufficient amount to raise the money with which to pay off and discharge any judgment rendered herein against said county, and for such other orders, decrees, and judgments as plaintiff may be entitled to as against said officers, and, further, that plaintiff be awarded a writ of mandamus against the defendant treasurer and his successor or successors in office commanding him that, as soon as the moneys are collected and turned over to him by the tax collector, he at once remit the same, or so much thereof as may be necessary, to plaintiff to pay off and discharge any such judgment in favor of plaintiff.'

"The defendant, the county of Houston, and the officers sued pleaded the special road law for Houston county passed by the Thirty-

Fourth Legislature of 1915 (Acts 34th Leg. p. 149), which, among other things, provides as follows:

" 'Sec. 5. The supervision and control of all roads and bridges situated in any special road district now or hereafter created shall be placed in the hands of an advisory board, consisting of five resident citizens residing in each of said districts, who shall be selected by the commissioners' court at the first regular meeting after the passage of this act, and annually thereafter, such advisory board to serve without compensation. Such advisory board to have the same jurisdiction and control over the roads and bridges in the respective districts in which each of said advisory boards reside as are conferred on the commissioners' court of Houston county as supervisors of the public roads and bridges. * * *'

" 'Sec. 8. * * * And all money paid into the general road and bridge fund of Houston county on any property * * * in any special road district, now or hereafter created, shall be apportioned by the commissioners' court to each of such districts in which same was so paid, and shall be entered to the credit of each of such districts in a separate account, to be kept by the county treasurer for each of said districts, and the money thus arising shall be expended upon the roads situated in each of said districts; and, provided further, that the remainder of the money paid into the general road and bridge funds of said county during each year on any property situated outside of any such road districts shall be apportioned to the respective commissioners' precinct outside of said road districts in proportion to the amount of taxes paid on property situated in each of said commissioners' precincts, and the county treasurer of said county shall keep a separate and distinct account of said funds for each of said commissioners' precincts, as provided above for keeping the accounts for said special road districts, and the money so apportioned to each of said commissioners' precincts shall be expended upon the roads situated in each of said commissioners' precincts. * * *'

"And further answer they alleged:

"That ever since said road law took effect the roads and bridges of said county had been worked, repaired, and improved under the provisions of same, and that the debts and warrants upon which plaintiff is suing were created and issued under the operation of such special road law and by virtue thereof, and that such warrants purport to be and were in fact drawn and issued against the special road and bridge fund of commissioners' precincts Nos. 1, 3, and 4, as created under such special road law, and that all contracts of plaintiff by or through which the indebtedness sued on was created were made by plaintiff with full knowledge of the existence of such special law, and that the provisions of said law were acquiesced in by plaintiff at the time said contracts were made.

" That, anterior to the creation of the debts herein sued on, the Houston county road district No. 3 and the Houston county road district No. 1 were duly and legally created.

" That the materials and supplies which the warrants sued on were intended to cover, if such material and supplies were furnished defendant Houston county by plaintiff and those under whom plaintiff claims, and which de-

fendants deny and demand strict proof of same, were used, if at all, by commissioners' precincts Nos. 1, 3, and 4, and not upon the roads or bridges situated in commissioners' precinct No. 2, or upon Houston county road district No. 1 and Houston county road district No. 3.

" 'That since the enactment of said special road law as amended in 1915 all funds coming into the treasury of Houston county have been appropriated and prorated and apportioned to the respective commissioners' precincts and to Houston county road district No. 1 and Houston county road district No. 3 in the manner provided by such law, and that all of such funds placed to the credit of commissioners' precincts Nos. 1, 3, and 4 have been since that time, and are now, being expended by the county treasurer of Houston county in payment of all warrants against such funds, respectively, which warrants have been duly registered, including the warrants herein sued on, and that all such warrants have been and are now being paid in their regular order of registration.

" 'That at the several times at which plaintiff alleges the warrants herein sued on were issued and were registered the indebtedness by them evidenced, together with other indebtedness then outstanding against the road and bridge funds of Houston county, as same were constituted and kept, and against the road and bridge fund of Houston county, required a tax greatly in excess of taxes permitted to be levied under the Constitution of the state of Texas, and that at the time such warrants were issued no provision was made for their payment by the levy of a tax, and it was not contemplated that they be paid out of the current revenues for the year in which they were issued, or otherwise, and same are illegal and void, and such warrants were not to be paid out of any fund within the immediate control of Houston county at the time of their issuance, and were to be paid out of county funds in future years.'

"By their supplemental answer the defendants denied generally the allegations of the plaintiff's amended petition, and, in reply to plaintiff's plea of quantum valebant, they alleged that plaintiff's suit as originally brought and prosecuted was a suit upon the warrants only, and not a suit for the value or purchase price of the material sold, and delivered to Houston county, and therefore so much of plaintiff's cause of action as is set up by its said plea of quantum valebant is a new cause of action, set up for the first time on the 11th day of April, 1921, and that such new cause of action, if any such ever existed, was at the time of filing said amended petition barred by the statutes of limitation of two and four years. Their prayer was for the cancellation of all the warrants sued on.

"Dave Leaverton and others, constituting the advisory boards for special road districts 1 and 3, intervened and pleaded the special road law for Houston county, as did the defendants. They also alleged the organization of special road districts 1 and 3 and resisted the writs of injunction and mandamus sought by plaintiff. However, as no assault is being made upon the judgment rendered in their favor, it becomes unnecessary to further state in detail the substance of their pleadings.

"By its supplemental petition the plaintiff demurred generally to the answers of the defend-

ants and interveners, and specially excepted to said answers as follows: (1) To those parts of said answers wherein they pleaded the special road law of Houston county, because that part of it which authorizes the commissioners' court to prorate the road and bridge fund to the commissioners' precincts contravenes section 9 of article 8 of the Constitution of Texas, in that the Constitution authorizes a tax of 15 cents on the $100 valuation of all taxable property in said county each year for road and bridge purposes, and said tax is a county tax, and is not a tax which any political subdivision of said county can take advantage of and use and appropriate in a manner which said special road law provides that it shall be done, and hence the allegations with reference to the proration of said road and bridge fund constitute no defense to the warrants sued on. (2) To those parts attacking the validity of the warrants issued by the commissioners' court, upon the ground that such attack constituted a collateral attack upon judgments of said court. (3) To those parts wherein they pleaded the statutes of limitation of two and four years, upon the ground that such plea was too vague and indefinite. The plaintiff also denied generally the allegations of said answers.

"The case was tried before the court without a jury, and, after overruling the demurrers and exceptions of all parties and hearing the evidence adduced, the court rendered judgment in favor of plaintiff for the sums evidenced by warrants Nos. 497 for $505.30, 495 for $439.20, 494 for $400.56, 888 for $532, 877 for $475.60, 886 for $100, and 884 for $460.80, sued on, aggregating the sum of $2,913,46, together with interest on said amount as provided in said warrants, aggregating the further sum of $395.09, and for a total sum of $3,308.55, but denied a recovery upon the remaining warrants sued upon, 14 in number, and by said judgment decreed that said 14 warrants be canceled and held for naught. Said judgment also contains the following recitals:

" 'It is further ordered, adjudged, and decreed that the writs of mandamus prayed for by the plaintiff against the county assessor, the county collector, the county treasurer, and the commissioners' court be and the same are here now in all things denied, save and except that the county treasurer and his successor or successors in office are ordered to pay off and discharge this judgment out of any fund coming into his hands as a result of taxation on taxable property in commissioners' precincts Nos. 1, 3, and 4 outside of and not a part of special road districts Nos. 1 and 3, known as Crockett and Grapeland special road districts, and that same be paid in the order as registered in the office of the treasurer of Houston county, in the proportion which the total amount of each warrant and the interest thereon payable out of each of said funds bears to the whole amount of this judgment. * * * It is further ordered, adjudged, and decreed by the court, that the defendant Houston county pay all costs of this suit. Such costs are here now taxed against the defendant county.

" 'It is further ordered, adjudged, and decreed by the court that the interveners take nothing as against the plaintiff, except as provided in this judgment, that the taxes collected from properties situated in special road districts Nos. 1 and 3, known as Crockett and Grapeland special road districts, not be subject to distribution under this judgment, and that the plaintiff take nothing as against the interveners.'

"From so much of the judgment as denied recovery to the plaintiff upon said 14 warrants and from that part thereof denying its prayer for a writ of mandamus, the plaintiff has appealed.

"Appellees by their cross-assignment complain of so much of said judgment as is against Houston county."

The Court of Civil Appeals affirmed the judgment of the trial court, 245 S. W. 991.

[1] Both the trial court and the Court of Civil Appeals held that the Houston county road law, portions of which are set out in the statement of the case, was not unconstitutional as urged by plaintiff in error. In this holding we cannot concur. We approach the subject with a consciousness that—

"The Legislature is a co-ordinate department of the state government, and it is their power and duty to pass upon the validity of all laws which they pass; and hence, when they have passed a law, they affirm its constitutionality, and the courts will not hold they have made a mistake, unless its invalidity is clearly apparent." Bodenheim v. Lightfoot, 103 Tex. 639, 132 S. W. 468.

[2] But we think the invalidity of the Houston county road law is clearly apparent. Article 3, § 56, of the Constitution, provides that:

"The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law, authorizing: * * * Regulating the affairs of counties, cities, towns, wards or school districts. * * *"

It is not "otherwise provided" in the Constitution that the Legislature may pass a local or special law "regulating the affairs of counties." Therefore the Legislature is prohibited by the above-quoted provision from passing any local or special law regulating the affairs of counties except as such regulation may be necessary or incidental to some other law which the Legislature is authorized by the Constitution to pass.

[3] Without entering at large upon the discussion of what is here meant by a "local or special law," it is sufficient to say that a statute which relates to persons or things as a class is a general law, while a statute which relates to particular persons or things of a class is special, and comes within the constitutional prohibition. Clark v. Finley, 93 Tex. 171, 54 S. W. 343. A local law is one the operation of which is confined to a fixed part of the territory of the state. Id. The statute under consideration relates to Houston county only—a particular one of the class, all counties being the class. It is therefore a special law. The statute is one the operation of which is confined to that part of the territory of the state fixed and embraced in the confines of Houston county. Operating as

it does in a fixed part of the territory of the state and its operation being confined to that fixed part of the territory of the state, it is a local statute.

That the money paid into the general road and bridge fund of a county and the disposition made of that money is an affair of the county we think will not be questioned. To regulate the affairs of a county is to prescribe the rules by which those affairs shall be governed. To regulate those affairs is also to control the instrumentalities by which they may be carried on and the means by which they may be aided and encouraged. Any change in those affairs brought about by reason of rules prescribed by a special or local statute is regulation of the affairs of counties by local or special laws.

By the general laws (Rev. St. 1911, art. 1432), it is prescribed that:

"The county treasurer of each county shall keep a well-bound book in which he shall register all claims against his county, when presented to him for registration; and no claim, or any part thereof, against a county shall be paid by such county treasurer, nor shall the same, or any part thereof, be received by any officer in payment of any indebtedness to the county, until it has been duly registered in accordance with the provisions of this title."

Article 1433 directs that:

"Claims against a county shall be registered in three classes as follows:

"1. All jury scrip and scrip issued for feeding jurors.

"2. All scrip issued under the provisions of the road law or for work done on roads and bridges.

"3. All the general indebtedness of the county, including feeding and guarding prisoners, and paupers' claims."

Article 1438 classifies the county funds as follows:

"The funds received by the county treasurer shall be classed as follows:

"1. All jury fees, all money received from the sale of estrays, and all occupation taxes; and this class of funds shall be appropriated to the payment of all claims registered in class first, described in article 1433.

"2. All money received under any of the provisions of the road and bridge law, including the penalties recovered from railroads for failing to repair crossings, prescribed in article 6494, and all fines and forfeitures; and this fund shall be appropriated to the payment of all claims registered in class second.

"3. All money received, not otherwise appropriated herein or by the commissioners' court; and the funds of this class shall be appropriated to the payment of all claims registered in class third."

Comparing these provisions with the portion of the Houston county special road law set out in the statement of this case, it is readily discernible that the latter law completely abolishes the application of the above-quoted general articles to Houston county and substitutes instead its own provisions entirely different. The Houston county road law is too long to be set out here in full.

[4] There is no questioning that the Legislature may commit a matter of county business to some other agency than the commissioners' court. The Constitution provides that the commissioners' court "shall exercise such powers and jurisdiction over all county business, as is conferred by this Constitution and the laws of this state, or as may be hereafter prescribed." Article 5, § 18. It does not inhibit the Legislature from committing a matter of county business to some other agency. Clark v. Finley, supra. But article 3, § 56, above quoted, does inhibit the Legislature from committing a matter of county business to some other agency by means of a local or special law, because the committing of such business to some other agency is a regulation of the affairs of the county.

The grounds on which the Court of Civil Appeals bases its holding that the Houston county road law is constitutional is the provision:

"And the Legislature may pass local laws for the maintenance of the public roads and highways, without the local notice required for special or local laws." Article 8, § 9.

This provision is embodied in a section providing for taxation. The taxes referred to are annual ad valorem taxes to be levied and collected for the further maintenance of the public roads. The pertinent portion of the section reads:

" * * * The Legislature may also authorize an additional annual ad valorem tax to be levied and collected for the further maintenance of the public roads; provided, that a majority of the qualified property taxpaying voters of the county, voting at an election to be held for that purpose, shall vote such tax, not to exceed fifteen cents on the one hundred dollars valuation of property subject to taxation in such county. And the Legislature may pass local laws for the maintenance of the public roads and highways, without the local notice required for special or local laws."

Article 3, § 56, of the Constitution, prohibited, in addition to the above-quoted restrictions, the Legislature from passing any local or special law "authorizing the laying out, opening, altering or maintaining of roads, highways, streets or alleys."

The effect of the last statement in section 9 of article 8, Constitution, above quoted, merely nullified the last above quotation from article 3, § 56, in so far as it pertains to roads and highways. The authority conferred by section 9, art. 8, of the Constitution, supra, is not "to enact special road laws" of all kinds, for all purposes indiscriminately, but is authority merely to pass local laws for the maintenance of the public roads and highways. In Dallas County v. Plowman, 99 Tex.

512, 91 S. W. 221, was involved the constitutionality of a provision of the Dallas county road law (chapter 132, Acts of the Twenty-Fourth Legislature, p. 213), providing for the laying out and maintenance of public roads. The provision of the local law in question in that case read:

"Whenever it shall be necessary to occupy any land for the opening, widening, straightening or draining any road or part thereof, if the owner of said land cannot agree with the court as to damages to be paid, the court may proceed to condemn the same in the same manner that a railroad company can condemn land for right of way, and the same proceedings may be had, and the same rights shall exist to each party that would exist if the proceedings were by a railroad company, except that the county shall in no case be required to give bond."

The court held that the phrase, "maintenance of public roads," in the above quotation from the Constitution, includes in its scope the laying out, opening, and construction of new roads as well as the repairing of those already laid out, and that the portion of the law in question was not unconstitutional. In summing up the court said:

"We conclude that the authority conferred upon the Legislature to 'pass local laws for the maintenance of ʿpublic roads,' etc., authorizes that body to confer upon a county power to do everything to which the taxes raised for the purpose may be lawfully applied."

We think it does not authorize the Legislature to confer upon a county power to do anything to which the taxes raised for the purpose may not be lawfully applied. The authority to enact special road laws generally and without limitation would carry with it the right to regulate the affairs of the county in all such matters as might be necessarily and appropriately connected with or subsidiary to the object of such general power to pass local or special road laws. But, as pointed out above, no authority to enact local or special road laws generally and without limitation is authorized by the Constitution. It authorizes the Legislature to pass local road laws for a restricted purpose—the maintenance of the public roads and highways. As shown above, our Supreme Court has held that the words, "the maintenance of public roads," include the laying out, opening, and construction of new roads. Therefore the authority conferred by the constitutional amendment carries with it the right to regulate the affairs of the county only in such respects as are necessarily and appropriately connected with or incidental and subsidiary to the object of such limited power—the maintenance, including the laying out, opening, and construction of public roads. It does not authorize the subtraction, by local or special laws, of powers from county commissioners and the commissioners' court conferred by general laws. It does not author-

ize a change in the financial system of counties fixed ʿby general laws. It does not authorize the creation of offices and the clothing of those officers with functions already performed by existing officers as provided for by general laws. None of these are incidental or necessary to the maintenance, laying out, opening, and construction of roads. It merely authorizes the application of the financial system and the governmental machinery already existing to the action authorized thereby. The financial system and the governmental machinery already existing under general laws are ample for all such activities. If the amendment had been intended to nullify the clause of section 56 of article 3, prescribing that the Legislature should not pass any local or special law regulating the affairs of counties, it would have been a simple matter to have added to it, at the time of its submission, some such words as, "and provide for the management and control thereof," as was done in the amendment authorizing the Legislature to provide for the formation of school districts by special laws. Constitution, art. 3, § 7.

[5] We think the sections of the Houston county road law quoted in the statement of the case by the Court of Civil Appeals were violative of that clause of the Constitution forbidding the regulation of county affairs by local or special laws. Hall v. Bell County (Tex. Civ. App.) 138 S. W. 178; Id., 105 Tex. 558, 153 S. W. 121; Altgelt v. Gutzeit, 109 Tex. 123, 201 S. W. 400; Commissioners' Court of Limestone County v. Garrett (Tex. Com. App.) 236 S. W. 970; opinion on rehearing, same case (Tex. Com. App.) 238 S. W. 894.

[6] The Houston county road law likewise violates another paragraph of section 56, article 3, of the Constitution, which forbids the Legislature to pass any local or special law "creating offices, or prescribing the powers and duties of officers, in counties, cities, towns, election or school districts." It is clear the act not only attempts to create a new county office in Houston county, to wit, the advisory boards for the various districts, prescribing their powers and duties (Commissioners' Court of Limestone County v. Garrett, supra), but it also attempts to limit the jurisdiction of the commissioners' court of that county accordingly, thus "prescribing the powers and duties of the county commissioners and the commissioners' court." The powers and duties of an officer may be prescribed by diminution as well as by augmentation.

Having decided that the Houston county road law is unconstitutional and void, we pass to a consideration of the rights of the parties in the light of that holding. The fact that the warrants were drawn payable out of subclasses of the road and bridge fund, which classes were created under the terms of the void special road law, seems not to af-

fect the validity of the warrants. In Clarke & Courts v. San Jacinto County, 18 Tex. Civ. App. 204, 45 S. W. 315, the suit was for the amount due on warrants for the price of stationery furnished the county. The warrants sued on were issued during the years 1890, 1891, 1892, and 1893, to be paid out of the general fund, for stationery. They were registered by the treasurer as of class No. 1 of claims against the county. It appeared from the evidence that before these warrants were issued the general fund of the county which is classed by the statute as No. 3 was divided by the commissioners' court into six special classes, and the tax levied to raise money to constitute the general fund was divided into six corresponding classes. The whole levy for general purposes amounted to 32 cents on the $100 of taxable values, and of this 2 cents on the $100 was levied to pay such claims as those of plaintiffs and this constituted class No. 1, according to the division thus made. The consequence was that enough money was never raised to pay such claims, some of which, issued to other parties as early as 1888, were still outstanding. It was further shown that by this division a special fund, called the "printing fund," was provided out of what would otherwise have constituted the general fund, and that out of this there were paid claims for printing, as they accrued, of later date than those of plaintiffs. In that case Judge Williams said:

"The allowance of the claims and issuance of the warrants was an auditing of them, and under the statute (Rev. St. 1895, art. 790), the county was protected from suit until such facts as those supposed arose. But plaintiffs were entitled not only to have their claims audited and allowed, but to have them paid, whenever, by following the provisions of law intended to provide means for their payment, funds were, or should have been, received sufficient for that purpose. It is provided by Rev. St. 1895, art. 852, that claims against the county shall be registered in three classes, specifying the kind that are to belong to each class. The claims of appellants belonged to the third class, or general indebtedness. By articles 853–855, registration of claims, according to class in the order of their presentation, is provided for, and article 856 provides: 'The treasurer shall pay off the claims in each class in the order in which they are registered.' Article 857 provides that all of the funds received by the treasurer 'shall be classed as follows,' and then gives three classes, corresponding with the three classes of claims before indicated, and requires that the funds of each class shall be appropriated to the payment of claims of the corresponding class. Articles 858, 859, are as follows: '(858) The commissioners' court shall have power to cause such other accounts to be kept, creating other classes of funds, as it may deem proper, and require the script to be issued against the same and registered accordingly.' '(859) The commissioners' court shall have power by an order to that effect to transfer the money in hand from one fund to another, as in its judgment is deemed necessary and proper, except that the funds that belong to class first shall never be diverted from the payment of the claims to which the same are appropriated by article 857, unless there is an excess of such funds.' We presume that the action of the commissioners' court in dividing up the third class of funds was supposed to be authorized by article 858. The language of article 857, requiring the three named classes of funds to be kept, is mandatory; and the provision of article 858 authorizes the creation of 'other' classes. The two provisions do not conflict, and the latter does not necessarily modify or control the other; for provisions may be found in the laws of this state for the raising of funds for special purposes, which would not be embraced in the classification required by the statute, but the keeping of which could be regulated by the court under article 858. * * * If it be conceded that article 858 so far modifies article 857 as to authorize the creation of other classes of funds out of those required by the latter, it cannot be allowed that the authority to do so can be so used as to destroy the right of holders of registered claims, under article 856, to have their claims paid out of the appropriate fund in the order of registration. This is an imperative requirement, which imposes a duty upon the county, and confers a right upon its creditors, and there is nothing in the other provisions to qualify either. Now, the evidence shows that by the device adopted this right has been denied to plaintiffs, and claims junior in date to theirs have been and are being paid out of the funds which the statute plainly says 'shall be appropriated to the payment of all claims registered in third class.' Article 857. This being true, it necessarily follows that plaintiffs' claims were not paid when they should have been paid, and since, by the action taken, they are required to look alone to a fund which is insufficient, instead of the whole of the fund designated by the statute, there is a virtual refusal to pay."

[7] We have quoted above article 1433, directing how claims against the county shall be registered, and also article 1438, directing how all funds received by the county treasurer shall be classed. These articles are the same articles referred to in the above quotation from Judge Williams' opinion as articles 852 and 857, respectively. Article 858 referred to in that quotation is now No. 1439. These articles and the deductions drawn therefrom by Judge Williams in the above cited case lead us to the conclusion that the mere fact that the warrants were drawn payable out of an unauthorized classification of funds works no invalidity in the warrants.

"A claim payable out of a general fund is properly paid from such fund notwithstanding the warrant recites that it is payable from special fund. Recitals in warrants which are merely surplusage do not affect their validity in general obligations of the municipality; and hence a recital in a warrant payable out of general funds that it shall be paid out of a special fund does not invalidate the warrant notwithstanding the municipality had no authority to create a special fund, or where an attempt to create a special fund was unavailing." McQuillin on

Municipal Corporations, § 2253, p. 4767, citing Abrahams v. Omaha, 80 Neb. 271, 114 N. W. 161; Rogers v. Omaha, 82 Neb. 118, 117 N. W. 119.

Hence, if not invalid for other reasons, the warrants are valid notwithstanding the unconstitutionality of the provisions of the Houston county road law. The Court of Civil Appeals found—

"that at the time the material was sold for the payment of which the 14 rejected warrants were issued, and at the time of the issuance of said warrants, there were no road and bridge funds in the hands of the county available to pay the debt so created, and it was further shown that it could not have been reasonably contemplated by the parties that such indebtedness would or could be paid out of road and bridge funds then in the immediate control of the county, or out of such funds as might reasonably be expected to come under its control for the lawful payment thereof. Inded, it was, we think, shown that the parties mutually understood and agreed that the material so sold was not to be paid out of any funds of the current year, in which the same was sold, but, to the contrary, that it was to be paid for out of the taxes to be collected for future years. It was shown, we think, that the commissioners' court knew that the material in payment for which said 14 rejected warrants were issued could not be paid out of the funds which were under its control or which might be expected to come under its control for the current year in which such material was purchased, and, so knowing, informed the representatives of plaintiff who sold the material of such financial condition of the county, and that the plaintiff would have to look for payment to the funds to be collected for future years."

[8, 9] But these are not such findings as are controlling or even permissible under the undisputed facts. The warrants forming the basis of suit are unambiguous. They promise payment, with one exception, in February, 1917, necessarily out of the current funds for 1916 and those under the immediate control of the court at the time the contracts were made and the warrants issued. They are not attacked as not speaking the truth of the transaction, and cannot be impeached by the character of testimony relied upon by the Court of Civil Appeals. The oral testimony tending to contradict the time and necessarily the means of payment is of no probative force whatever. The county has solemnly promised payment out of current funds for the year, then under its immediate control, in an amount not shown to have been beyond its right of reasonable expectation. This was not the creation of a debt within the meaning of the constitutional prohibition. In McNeal v. Waco, 89 Tex. 83, 33 S. W. 323, it is said:

"We conclude that the word 'debt,' as used in the constitutional provisions above quoted, means any pecuniary obligation imposed by the contract, except such as were, at the date of the contract, within the lawful and reasonable contemplation of the parties, to be satisfied out of the current revenues for the year, or out of some fund then within the immediate control of the corporation. * * *

"Prima facie, every pecuniary obligation attempted to be created by contract is a debt, within the meaning of the constitutional provisions above, and a party attempting to recover against the city thereon must allege the facts showing a compliance with the Constitution and statutes necessary to bind the city, or must allege such facts as bring the particular claim within the exception above stated in the definition of the word 'debt.' If it should appear from the pleadings or the face of the obligation that the subject of the contract was clearly a matter of ordinary expenditure, such as repairing streets or salary of an officer, this would be sufficient to bring it within the exception, for the prima facie presumption would be that such claim was intended to be paid out of the current revenues annually collected for payment of such claims, and it would not be presumed the city had attempted to make contracts in excess of its revenues for the year. * * *"

[10, 11] The contracts here being for purchases of a character to show upon their face to be those of ordinary expenditures, and further specifically promising payment at a time when payment could be made only out of current funds for the year, the presumption arises that such was the intention of all parties, and in the absence of any attack upon the warrants and of any legitimate evidence tending to show a contrary intention, this presumption becomes conclusive. In the view we take of the record there is no evidence to the contrary. This presumption is further strengthened by the familiar one that officers have done their duty, which presumption itself would become final in the absence of a showing to the contrary. The McNeal v. Waco Case has been followed down to the latest date. Tackett v. Middleton (Tex. Com. App.) 280 S. W. 563, 44 A. L. R. 1143.

From what we have said it follows plaintiff in error is entitled to a judgment for the amount of each and all of the warrants sued upon, together with interest as therein stated, except No. 127 for $500, which upon its face appears to be a debt contracted beyond the current funds or other funds under the immediate control of the county, and for the writ of mandamus prayed for against the county judge and county commissioners of Houston county and their successor or successors in office compelling payment, in the manner sought.

We therefore recommend that the judgments of the Court of Civil Appeals, and the trial court be reversed, and judgment as above indicated be here rendered for plaintiff in error.

CURETON, C. J. Judgments of the Court of Civil Appeals and district court both reversed, and judgment rendered for plaintiffs in error as recommended by the Commission of Appeals.